**UNITED STATES of America ex rel. Robert GRAHAM, Petitioner–Appellant,**

v.

**The UNITED STATES PAROLE COMMISSION, Respondent–Appellee.**

**No. 79–2706.**

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1980.

James H. Wilson, III, Atlanta, Ga. (court–appointed), for petitioner–appellant.

Oliver B. Dickins, Jr., Asst. U. S. Atty., Atlanta, Ga., for respondent–appellee.

Before GEE and RANDALL, Circuit Judges, and LYNNE *, District Judge.

GEE, Circuit Judge:

In September 1973, petitioner Robert Graham was convicted of bank robbery and assault and sentenced to fifteen years in prison under 18 U.S.C. § 4208(a)(2) (1970) (current version at *id.* § 4205(b)(2) (1976)). He received an initial parole hearing in December 1974, at which time parole was denied and a review hearing scheduled for December 1977, pursuant to regulations then in effect requiring that prisoners be considered for parole at least once every three years. 28 C.F.R. § 2.14 (1974).[1]

In 1976, Congress passed the Parole Commission and Reorganization Act of 1976, 18 U.S.C. § 4201 *et seq.* ("PCRA"), which required, inter alia, parole hearings to be held at least once every two years for prisoners with sentences of seven years or more. *Id.* § 4208(h)(2).[2] Accordingly, the parole regulations were modified to provide for an interim hearing every two years "to consider any significant developments or changes in the prisoner's status that may

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. The 1974 version of § 2.14 provided in pertinent part:

   All hearings subsequent to the initial hearing shall be considered as review hearings. Review hearings by examiners designated by the Board shall be scheduled for each Federal institution, and prisoners shall appear for such hearings in person . . . .:

   (d) Notification of review decisions shall be given as set forth in § 2.13(c). No prisoner shall be continued for more than three years from the time of the last hearing without further review.

2. Section 4208(h)(2) provides:

   (h) In any case in which release on parole is not granted, subsequent parole determination proceedings shall be held not less frequently than:

   . . . . .

   (2) twenty–four months in the case of a prisoner with a term or terms of seven years or longer.

have occurred subsequent to the initial hearing," 28 C.F.R. § 2.14 (1978),[3] as well as a "full reassessment of the [prisoner's] case" at four–year intervals. *Id.* § 2.14(c) (1978).[4]

In December 1977, Graham received his scheduled parole hearing. The Parole Commission again denied him parole and slated him for an interim parole hearing in December 1979 and for a full four–year reconsideration in December 1981, as required by the recently promulgated parole regulations.[5] *See* nn. 3 & 4, *supra.*

After exhausting his administrative remedies, Graham filed a pro se petition for habeas corpus pursuant to 28 U.S.C. § 2241 and for mandamus pursuant to 28 U.S.C. § 1361, alleging (1) that the interim hearing for which he was scheduled in December 1979 is a limited hearing that does not meet the statutory requirements of 18 U.S.C. § 4208(h)(2), *see* n.2, *supra,* and (2) that

retroactive application of the parole regulations set out in 28 C.F.R. § 2.14 (1978) violates the ex post facto clause of the United States Constitution.[6] On the recommendation of the United States Magistrate, the district court dismissed the petition. Graham appeals this dismissal, asserting the same two grounds.[7]

Although Graham cannot prevail on his statutory claim, he has persuaded us that a remand to the district court is in order for further findings on his ex post facto claim.

■ Graham is foreclosed from arguing that the amended parole regulations do not comport with the statutory requirements of 18 U.S.C. § 4208(h)(2) by our recent decision in *United States ex rel. Metro v. United States Parole Commission,* 613 F.2d 117 (5th Cir. 1980) (per curiam). In *Metro* we rejected an argument identical to the one advanced here:

3. § 2.14. Subsequent proceedings.
(a) *Interim proceedings.* The purpose of an interim proceeding required by 18 U.S.C. § 4208(h) shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing.
(1) Notwithstanding a previously ordered presumptive release date or four year reconsideration hearing, interim hearings shall be conducted by an examiner panel pursuant to the procedures of § 2.13(b), (c), (e) and (f) at the following intervals from the date of the last hearing:

. . . . .

(ii) in the case of a prisoner with a maximum term or terms of 7 years or more, every 24 months (until released).

. . . . .

(3) Following an interim hearing, the Commission may:
(i) Order no change in the previous decision;
(ii) Advance a presumptive release date, or the date of a four–year reconsideration hearing. However, it shall be the policy of the Commission that once set, a presumptive release date or the date of a four–year reconsideration hearing shall not be advanced except under clearly exceptional circumstances.

4. Section 2.14(c) provides:
(c) *Four year reconsideration hearings.* A four year reconsideration hearing shall be a full reassessment of the case pursuant to the

procedures of § 2.13 to determine whether the setting of a presumptive release date would be appropriate at that time.
(1) A four year reconsideration hearing shall be ordered following initial hearing in any case in which a release date is not set.
(2) Following a four year reconsideration hearing, the Commission may:
(i) Set a presumptive release date, if such date falls within four years of the hearing; or
(ii) Continue the prisoner to a further four year reconsideration hearing if no presumptive release date is set.

5. Section 2.14(c) was further amended in 1979 to provide for ten year, rather than four·year, reconsideration hearings. *See* 28 C.F.R. § 2.14(c) (1979). This subsequent amendment is not at issue on this appeal, and we express no opinion as to the propriety of a ten-year interval between full reassessments of a prisoner's case.

6. "No Bill of Attainder or ex post facto Law shall be passed." U.S.Const. art. I, § 9, clause 3.

7. Graham also charged below that the Parole Commission's reliance on the same factors in denying him parole as those used by the district court in sentencing him was a form of double jeopardy. However, this ground, which was rejected below, is not raised on appeal.

The requirement of 18 U.S.C. § 4208(h)(2) is simply that "subsequent parole determination proceedings" be held *every two years.* The statute does not require a full–scale hearing every two years. To the contrary, the legislative history clearly demonstrates that Congress intended the subsequent biennial parole hearings to have a scope and purpose precisely as provided by the regulations . . . .

*Id.* at 119. Petitioner's counsel at oral argument conceded that *Metro* controls on this question but argued that *Metro* was wrongly decided. Even if it were, we are nevertheless bound by our previous decision, which can only be overruled en banc. *See United States v. Lewis,* 475 F.2d 571, 574 (5th Cir. 1973).

The issue of whether the revised parole regulations promulgated under the PCRA can be applied retroactively to prisoners sentenced before the date of the PCRA, however, was not explicitly considered in *Metro.*[8] Although changes in the statute or the regulations that are procedural or remedial in nature apply retroactively, *see, e. g., United States v. Vanella,* 619 F.2d 384, 386 (5th Cir. 1980), "official po[s]t–sentence action that delays eligibility for supervised release runs afoul of the *ex post facto* proscription." *Shepard v. Taylor,* 556 F.2d 648, 654 (2nd Cir. 1977). *See also Warden v. Marrero,* 417 U.S. 653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974) ("a repealer of parole eligibility previously available to imprisoned offenders would clearly present [a] serious question under the ex post facto clause of . . . . the Constitution."). Put another way, if the PCRA or the regulations promulgated thereunder effectuate only a procedural change in the manner in which the Parole Commission determines a prisoner's eligibility for parole, then the statute and the regulations may be applied retroactively; however, if the statute or the regulations affect a prisoner's substantive right to parole eligibility, neither can be so applied retroactively without violating the ex post facto clause.

What troubles us is not the abbreviated nature of an interim hearing under the amended regulations,[9] but the *remedy* available to the Parole Commission *after* it holds an interim hearing. Under the amended regulations, after an interim hearing, "a presumptive release date or the date of a four–year reconsideration hearing shall not be advanced *except under clearly exceptional circumstances."* 28 C.F.R. § 2.14(a)(3)(ii) (1978) (emphasis added). Under the regulations in effect at the time Graham was sentenced, he was eligible for parole review every three years, and the Parole Commission was free to act even in the absence of "clearly exceptional circumstances." Undoubtedly, the "clearly exceptional circumstances" test of the amended regulations circumscribes the Commission's ability to advance a presumptive release date. However, in the absence of any guidance in the regulations as to what circumstances might be "clearly exceptional," and without any evidence in the record as to what meaning the Parole Commission imparts to the term "clearly exceptional circumstances," we are unable to determine whether a prisoner's parole eligibility is in

---

**8.** Of course, our holding in *Metro* that the amended regulations applied to petitioner Metro implicitly ratified the retroactive application of those regulations, since Metro, like Graham, was sentenced before the effective date of the PCRA and hence before the promulgation of the amended regulations.

**9.** According to petitioner's counsel, the most significant difference between an interim hearing held pursuant to the amended regulations and a review hearing held pursuant to the regulations in effect at the time of Graham's sentencing is that the latter provide for a prisoner's appearance in person at the hearing, while the former do not. We are unable to characterize this change as anything other than procedural, since it can in no way be said to increase the prisoner's punishment or curtail his eligibility for parole. Nor can it be said that the Parole Commission's considering only "significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing," 28 C.F.R. § 2.14(a) (1978), materially affects a prisoner's substantive right to parole eligibility, since it must be assumed that if no changes took place or only insignificant developments occurred, the Parole Commission would refuse to set or advance a presumptive release date.

fact significantly restricted by the amended regulations.[10] We therefore remand this case to the district court so that it may determine whether Graham's eligibility for parole is substantially diminished or eliminated by the "clearly exceptional circumstances" standard.

REVERSED and REMANDED.

10. The following hypothetical illustrates one way in which a prisoner's parole eligibility could *conceivably* be substantially affected by the "clearly exceptional circumstances" standard, depending on its scope. Assume that, under the amended regulations, the Parole Commission schedules Prisoner X at his initial hearing for presumptive release in three years and six months. Two years later, at X's interim hearing, the evidence reveals that he has been a model prisoner and has attained a college degree since the time of his initial hearing. If the Parole Commission does not deem these circumstances "clearly exceptional," then it will not advance X's presumptive release date, and he will be required to spend another year and a half in jail. Now assume that X's parole eligibility is governed by the regulations in effect in 1974. At X's three-year review hearing, the Parole Commission, unconstrained by a "clearly exceptional circumstances" standard, might well be convinced by the same evidence to advance his presumptive release date six months and release him immediately. Thus, in this scenario, the net effect of the "clearly exceptional circumstances" standard is to postpone X's release on parole and keep him incarcerated for an additional six months.

We stress that the preceding scenario is merely speculative, since we do not know how the "clearly exceptional circumstances" standard is in fact applied by the Parole Commission. It is precisely for this reason that we remand to the district court.