UNITED STATES of America

v.

Francis D. FERRI a/k/a Rick Joseph Laverich.

Appeal of Kenneth R. MATTHEWS, Kenneth R. Matthews, Appellant.

Nos. 78–2370, 78–2410, 78–2584 and 78–2585.

United States Court of Appeals, Third Circuit.

June 18, 1981.

Rehearing Denied August 18, 1981.

Kenneth R. Matthews, pro se.

Robert J. Cindrich, Thomas A. Crawford, Jr., Sandra D. Jordan, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Kenneth Matthews was convicted for maliciously damaging by means of an explosive a vehicle used in interstate commerce; for illegally making a destructive device; for the unregistered possession of a destructive device; and for mail fraud. 18 U.S.C. §§ 2, 371 and 844; 26 U.S.C. §§ 5861(f), 5871; 26 U.S.C. §§ 5861(d) and 5871; 18 U.S.C. § 1341. A sentence of 15 years incarceration was originally imposed on April 23, 1975.[1] The convictions were affirmed by this Court in a judgment order dated March 7, 1976. 532 F.2d 746 (3d Cir. 1976) (mem.).

On May 30, 1978, Matthews filed a petition for a writ of habeas corpus, which the district court construed as a motion to vacate Matthews' sentence. In the petition, Matthews alleged:

(1) That the intent of the sentencing judge had been frustrated by the actions of the Parole Commission;

(2) That Matthews had not received an initial classification hearing within 90 days of his arrival at Leavenworth Penitentiary;

(3) That the guidelines and salient factors used by the Parole Commission changed since sentencing (April 23, 1975) and commencement of the sentence (December 1, 1977) to the detriment of appellant;

---

**1.** Matthews' sentence was thereafter adjusted twice. *See* Section II *infra.*

(4) That since the parole guidelines call for fifty-five months imprisonment, which is in excess of one-third of his sentence, the sentencing intent of the district judge was frustrated; and

(5) That since the district judge sentenced Matthews under 18 U.S.C. § 4208(a)(2), but parole authorities had "amended" his sentence to provide for parole eligibility under 18 U.S.C. § 4205(b)(2), the parole authorities had usurped a judicial function.

By an order dated October 17, 1978, the district judge denied the petition. In its opinion accompanying the order, the district court noted that a 55 month sentence is less than one-third of the 15 year sentence that had been imposed on Matthews. The district court stated specifically that its sentencing intent was not frustrated at all, and it had left to the discretion of the parole authorities whether to keep Matthews in prison for at least one-third of his sentence, all of his sentence, or to release him sometime during the course of his sentence.

Matthews then filed an appeal to this Court in which he repeated the same claims that he had advanced before the district court in his petition for habeas corpus, and added the argument that application of the new parole guidelines to him is prohibited by the *ex post facto* clause of the Constitution. He relied upon *Geraghty v. U. S. Parole Commission,* 579 F.2d 238 (3d Cir. 1978), which was ultimately vacated and remanded, *sub nom. United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). This Court in considering Matthews' appeal was guided, *inter alia,* by the case of *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), which held that the claim that a sentencing judge's intent was frustrated is no longer available in a collateral attack. On March 7, 1980, we affirmed the judgment of the district court. 620 F.2d 290 (3d Cir. 1980) (mem.)

Thereafter, Matthews filed a petition for a writ of certiorari to the Supreme Court on May 12, 1980. In his petition, Matthews presented the following issues for review:

A. The United States Bureau of Prisons by knowingly amending petitioner's parole eligibility to Title 18 U.S.C. 4205(b)(2) violated due process and the division of powers as defined in the Constitution.

B. The petitioner is eligible for parole under Title 18 U.S.C. 4208(A)(2) (1979), as well as under statutory parole eligibility criteria 28 C.F.R. 2.18, and should be released on parole.

C. The Parole Guidelines, 1976 P.C.R.A., are illegal, violate the intent of Congress, and the ex post facto clause.

D. The parole board is bound by its own rules and regulations in considerations for parole, and the laws and Constitution of the United States.

E. The district court erred in its opinion filed on October 17, 1978 and missed the thrust of the issues at 78–599 . . . in its reliance on West. Supp. 1977.

F. The parole board guidelines applied were incorrect.

G. The parole board denied Matthews assistance of counsel by their actions.

The arguments listed under B, F and G were presented for the first time. In effect, they advance the proposition that the Parole Commission had improperly and incorrectly applied its guidelines to Matthews. Neither the district court nor this Court had the opportunity to rule on these contentions. The principal claim that seems to have been advanced in the petition for certiorari is that the application to Matthews of the guidelines constituted an *ex post facto* violation.[2]

---

**2.** The memorandum in opposition to Matthews' petition for certiorari submitted by the Solicitor General urged that certiorari not be granted, noting that Sections 4208(a)(2) and 4205(b)(2) are virtually identical, that *Addonizio* forecloses any argument with respect to sentencing intent, and since there has been no "decrease in petitioner's parole eligibility," no *ex post facto* violation occurred. The Solicitor General further observed that with the vacation of *Geraghty* for further proceedings on the class action issue there was no apparent conflict among the Circuits regarding the parole guidelines and the *ex post facto* prohibition.

The Supreme Court vacated the judgment of affirmance that had been entered by this Court and remanded for further consideration in light of *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

## I.

In *Weaver v. Graham*, the Supreme Court found unconstitutional a Florida statute governing "gain time for good conduct" which effectively reduced "gain time" for prisoners who had been sentenced prior to the enactment of the new statute. Under the older statute, prisoners gained 5 days per month during the first two years of a sentence, 10 days per month during the third and fourth years, and 15 days per month thereafter. Under the newer statute the gain time was reduced to 3, 6 and 9 days per month respectively during the same time periods.

Analyzing the Florida statute, the Supreme Court found that it had failed both elements of the *ex post facto* test: retrospective effect and detrimental impact. First, the Supreme Court held that the statute was retrospective because it applied to all prisoners then incarcerated in Florida, including those sentenced prior to the enactment of the statute. 450 U.S. at 28, 101 S.Ct. at 964. Second, it declared that the statute was detrimental or disadvantageous to the prisoners because "on its face, the statute reduces the number of monthly gain time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain time accumulation lengthens the period that someone in petitioner's position must spend in prison * * * thus the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." *Id.* at 31, 101 S.Ct. at 966. The practical effect of the newer statute was to extend Weaver's required time in prison, assuming good behavior, over two years beyond that which he could have expected at the time of his sentencing.

The Supreme Court rejected the argument by Florida that the statute was not retrospective because gain time was not part of the original sentence and thus not part of the punishment annexed to the crime. To the contrary, the Supreme Court reasoned that gain time is one determinant of the prison term and that a sentence or punishment is effectively changed when the determinant is changed. Further, the Supreme Court noted that it has held a statute retrospective even when it alters punitive conditions outside of the sentence. 28–31, 101 S.Ct. at 964–966. For prisoners who were sentenced prior to the enactment, the challenged Florida statute substantially altered the consequences attached to the crime. Only retrospective law which does not alter the consequences to a prisoner's detriment escapes the *ex post facto* prohibition. The Supreme Court proceeded to hold that the Florida statute materially constricted to his detriment the petitioner's opportunity to earn gain time. This limitation, explained the Court, violates the *ex post facto* clause notwithstanding the fact that the award of gain time is discretionary. The Supreme Court's holding in this regard was based on two cases involving parole opportunities: *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), and *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967) *aff'd* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968). The net effect of *Weaver*, as applied here, would appear to render violative of the *ex post facto* clause a statute which operates retrospectively and which significantly diminishes a prisoner's opportunity to reduce his period of incarceration and thereby increases his punishment.

The reasoning of the Supreme Court in *Weaver v. Graham* would appear to strengthen the views expressed by this Court in *Geraghty*. We concluded in *Geraghty* that there is a potential violation of the *ex post facto* clause in the retrospective application of new guidelines promulgated by the United States Parole Commission when they were applied to prisoners who were sentenced prior to enactment of the

statute in 1976. This same rationale may apply to Matthew because he was sentenced in 1975.

In *Geraghty* the prisoners were sentenced under 18 U.S.C. § 4208(a)(2), the statute which was in effect prior to the enactment of the Parole Commission Reorganization Act, 18 U.S.C. §§ 4201–4218 (1976). Consequently, they had been immediately eligible for parole at the discretion of the Parole Board in accordance with 18 U.S.C. § 4206. Section 4206 empowered the Board to release a prisoner when the Board determined that there was a reasonable possibility that the prisoner could live and remain at liberty without violating the laws and such release would not be incompatible with the welfare of society. With the advent of the new guidelines it was argued that certain prisoners otherwise eligible for parole under the old standards would not be released until the mandatory release date or considered for release prior to reaching the minimum range of their sentences.

We concluded in *Geraghty* that the net effect of the guidelines in this regard, if mechanically applied to prisoners sentenced prior to the new statute, might well be to deprive them of the opportunity to apply for discretionary release under § 4208(a)(2) and § 4206. In the course of the *Geraghty* opinion, we employed an analysis parallel to that of the Supreme Court in *Weaver* —predicating our reasoning on *Lindsey v.*

*Washington, supra; Greenfield v. Scafati, supra*; and *Warden v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). *See Geraghty, supra*, 579 F.2d at 263–65.[3] We remanded, inter alia, for further proceedings so that the district court could determine whether the Parole Commission had, in fact, exercised discretion in applying the new guidelines.

In view of the remand by the Supreme Court, we have carefully reconsidered the petition for writ of habeas corpus that had been filed previously by Matthews. We believe it does present an *ex post facto* claim, but fails to allege any arbitrary, unreasonable or nonindividualized treatment resulting in a detrimental impact or an actual denial of parole for Matthews. Indeed, the only proceeding[4] about which Matthews complains is an initial parole classification procedure which occurred within 120 days of Matthews' arrival at prison. He asserts that he did not receive a parole classification within 90 days of his arrival, and contends that this was an infraction of parole board regulations. However, Section 2.12, 28 C.F.R. provides that the initial classification should occur within 120 days of a prisoner's arrival at the prison. In addition, Matthews makes no claim of prejudice as a result of the alleged delay in establishing his original classification.

The only prejudice which Matthews arguably sets forth in his petition is that he is

---

**3.** In *Geraghty*, we stated, at 266 and 267:

> *From our analysis above, it is clear that the legislature could not retroactively, without offending the ex post facto clause of the Constitution, substantially decrease parole eligibility by legislation.* We take it that a similar prohibition applies to an increase in punishment brought about by rule-making. The legislature cannot, by delegation, escape constitutional limitations on its power. *And to maintain that the present parole guidelines enact no substantial limitation on parole eligibility may well be to misinterpret both the legal and practical effects of the guidelines.*
>
> * * * * * *
>
> As previously noted in the legislative history of the PCRA, the joint conference committee explicitly approved "the principles established in *Pickus*" with regard to the nature of the guidelines. Moreover, the PCRA itself empowers the Commission to "grant or deny

release on parole notwithstanding the guidelines . . . if it determined there is good cause for so doing." "Good cause," however, according to the legislative history "for purposes of this section, means substantial reasons." *It appears, therefore, that the guidelines are designed to be not mere hortatory "clarifications" of policy, but rules which are to be followed except for "substantial reason" to the contrary. The freedom of the Commission to grant parole prior to the customary release date is constrained, and the "situation" of prisoners otherwise eligible for parole is "altered to their disadvantage."*

**4.** Matthews received an initial parole classification hearing April 18, 1978. Insofar as we can determine, the only other parole classification hearing occurred February 22, 1980, with a notice of action filed March 14, 1980. The latter action is not properly contested herein.

not eligible for *immediate* parole consideration because of the new act and the resulting guidelines, and that such a consequence is allegedly contrary to what the old act would have provided. Matthews goes on to charge that the sentencing colloquy in the district court indicates that the district judge intended him to be immediately eligible for parole, and thus that the intent of the sentencing judge has been frustrated. However, as previously mentioned, the district judge specifically negated this possible interpretation when he stated that the Parole Board had in no way frustrated his sentencing intent. Further, *Addonizio* stands as a bar to this latter claim. *See supra* at 3.

Nonetheless, it is observed that Matthews filed his petition for habeas and submitted his briefs in support thereof without the assistance of counsel. Moreover, neither the district court nor this Court had available at the time of its decisions the teachings of *Weaver v. Graham*. In light of these two factors, it would appear appropriate to remand this matter to the district court for full consideration of Matthews' contentions, and with the further suggestion that counsel be appointed in order to assist Matthews to present his arguments as effectively as possible in view of the complicated evolution of the law as set forth in *Weaver* as well as in *Geraghty*.

## II.

We note that recent developments in the district court may affect this matter. Matthews' sentence has been altered twice. First, by an order dated October 21, 1980, the district court vacated the original sentence and resentenced Matthews to exactly the same sentence to permit the timely filing of a Rule 35 F.R.Crim.P. motion for reduction of sentence, in accordance with this Court's opinion in *United States v. Ackerman*, 619 F.2d 285 (3d Cir. 1980). Second, four motions on Matthews' behalf have been filed recently, by Matthews and court-appointed counsel, to correct his sentence and to reduce his sentence pursuant to Rule 35. In an opinion and order filed April 1,

1981, the district court disposed of the motions by correcting the sentence imposed on Count 2 of Matthews' indictment. Matthews was originally sentenced to 5 years on Count 1, 15 years on Count 2, and 3 years on Counts 3, 4, 5, 6, 7, 8, and 9, all to run concurrently, with parole eligibility to be ascertained in accordance with 18 U.S.C. § 4208(a)(2).

Matthews' most recent challenge was to the 15 year Count 2 sentence for violation of 18 U.S.C. § 844(i), which provides for an enhanced penalty of up to 20 years and a $20,000 fine where personal injury occurs in the criminal use of explosive devices. In the transaction giving rise to Matthews' conviction, an unindicted coconspirator, Guy Elias Bertini, suffered amputation of his hand and upper arm when an explosive device detonated prematurely; the intended victim, however, never was injured.

Relying on the Tenth Circuit's decision in *United States v. Schwanke*, 598 F.2d 575, 578–579 (10th Cir. 1979), which held that Congress did not intend § 844(i) to reach the injuries of a coconspirator, the district court concluded that Matthews' sentence on Count 2 should be changed. First, the court corrected the sentence to 10 years, and then reduced it further to 9 years. This was done by an order dated April 1, 1981. In addition, the district court *altered* the parole eligibility aspect of the sentence from 18 U.S.C. § 4205(b)(2) to 18 U.S.C. § 4205(a). Section 4205(a) provides that "a prisoner shall be eligible for release on parole after serving one-third of such term or terms...." Both counsel and the appellant *pro se* filed notices of appeal from the April 1st order. *See* C.A. No. 81–1866.

On remand the district court should consider what impact, if any, the adjustments in Matthews' sentence may have on the *ex post facto* contentions he has presented, eliciting argument regarding the effect of the Guidelines on the sentences covered by § 4205(a) as well as on Matthews' earlier § 4205(b)(2) sentence, all in light of *Weaver* and *Geraghty*.

### III.

The matter will be remanded to the district court for proceedings consistent with this opinion.