UNITED STATES of America,

v.

John Patrick TULLY, Defendant.

Crim. No. 281–73.

United States District Court,
D. New Jersey.

Aug. 28, 1981.

William W. Robertson, U. S. Atty. by Robert S. Steinbaum, Melvin Krakov, Asst. U. S. Attys., Newark, N. J., for the Government.

Michael L. Goldberg, Philadelphia, Pa., for defendant.

## OPINION

CLARKSON S. FISHER, Chief Judge.

On January 7, 1975, petitioner pled guilty to Counts I and II of an indictment charging him with conspiring to import and distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 846, 952(a), 960, and 963, and using a telephone to facilitate commission of the conspiracy, in violation of 21 U.S.C. § 843(b). In conjunction with the petitioner's guilty plea, Count III of the indictment was dismissed on the Government's motion. In addition, in return for his cooperation with law enforcement authorities concerning his knowledge of violations of federal narcotic laws, the Government agreed not to prosecute petitioner on the basis of such information and to inform the sentencing judge of the nature and extent of any such cooperation.

On July 28, 1975, petitioner was sentenced, pursuant to 18 U.S.C. § 4208(a)(2), to a twelve-year term to be followed by a special-parole period of five years on Count I and a two-year term to run concurrently with this sentence on Count II. On September 18, 1980, the court, on its own motion, corrected its sentence by eliminating the special-parole term.

Petitioner has moved to vacate his sentence pursuant to 28 U.S.C. § 2255 alleging that (1) the court was without jurisdiction to impose such sentence; (2) the sentence is in excess of the maximum prescribed by law because of the five-year special-parole term; (3) he was mentally incompetent at the times of the plea and sentencing because of drugs administered to him by prison authorities; (4) ineffective assistance of counsel;[1] (5) the United States Parole Commission's (Commission) failure to consider petitioner for parole prior to the one-third point of his sentence frustrated the expectations of the sentencing judge; and (6) the Commission violated the *ex post facto* clause of the United States Constitution, Art. I, § 9, by the retroactive application of new parole guidelines at the time of his hearing in November 1978.

Petitioner's claim that the sentencing judge has an objective and enforceable expectation as to when a defendant shall become eligible for parole consideration is no longer available as a basis for collateral attack of a sentence and, therefore, is not cognizable under 28 U.S.C. § 2255. In *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), three prisoners contended that a postsentencing change in the policies of the Commission prolonged their imprisonment beyond the period intended by the sentencing judge. The Court held that "subsequent actions taken by the Parole Commission—whether or not such actions accord with a trial judge's expectations at the time of sentencing—do not retroactively affect the validity

1. Petitioner has failed to satisfy his burden of proof with respect to the first four claims set forth in his petition. Petitioner's claim that the *court was without jurisdiction to impose sentence upon him because he did not plead guilty to violating 21 U.S.C. § 963* has no basis in the record. Count I of the indictment, to which petitioner pled guilty, alleges a violation of 21 U.S.C. § 963. Petitioner's claim that the sentence is in excess of the maximum prescribed by law was rendered moot when the sentencing court, on its own motion, corrected the sentence by eliminating the special-parole term in accordance with *Bifulco v. United States*, 447 U.S. 381, 401, 100 S.Ct. 2247, 2259, 65 L.Ed.2d 205 (1980). Petitioner's claim of mental incompetence at the times of his plea and sentencing is totally undermined by the record. Likewise, petitioner has failed to carry his burden of proof to demonstrate ineffective assistance of counsel. *See United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

of the final judgment itself," and "do not provide a basis for collateral attack on . . . sentences pursuant to § 2255." *Id.* at 190, 99 S.Ct. at 2243. *See United States v. Ferri,* 652 F.2d 325 (3d Cir. 1981).

▬ *Habeas corpus,* an attack on the legality of incarceration and not a collateral attack on judgment, is the proper vehicle for attacking Parole Commission action. *See Izsak v. Sigler,* 604 F.2d 1205, 1206 n.1 (9th Cir. 1979); *Thompson v. United States,* 536 F.2d 459, 460 (1st Cir. 1976); 28 U.S.C. § 2241. The *habeas corpus* power of federal courts over prisoners in federal custody has been confined by Congress through 28 U.S.C. § 2241 to those district courts within whose territorial jurisdiction the custodian is located. *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973). Contrary to the Government's contentions, petitioner's physical absence from the territorial jurisdiction of this district court does not *per se* bar this court's jurisdiction over his petition:

> Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495, 93 S.Ct. at 1129. *See also Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963).

▬ Considerations of fairness and basic convenience require that this court assume jurisdiction over this petition. Because of his cooperation with law enforcement officials, petitioner was given Witness Protection Unit status, and his case was designated as a Central Monitoring Case. Such inmates require central office or regional office approval for transfers or community activities recommended by the chief executive officer. The powers and discretion over prisoners which are usually accorded to local authorities and custodians are in this case ultimately vested in the central office in Washington, D. C. *See Program Statement,* "Central Inmate Monitoring System," Federal Prison System, No. 5190.2 (June 1, 1979). Further, because of his prisoner status, petitioner's case was designated by the Parole Commission to be an original jurisdiction case, which requires that the Regional Commissioner forward the case to the National Commissioners for parole decision. *See* 28 C.F.R. § 2.17 (1980). Technically, a decision that petitioner is entitled to release or a new parole hearing might be thought to exhaust this court's jurisdiction and require petitioner's complaint about Commission procedures to be filed in the District of Columbia. However, such a course would likely result in a transfer of the suit back to this district, since this court is most familiar with the long history of petitioner's case and the voluminous court records are located within this district. The Court cautioned in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. at 500, 93 S.Ct. at 1132, that 28 U.S.C. § 2241 should not be viewed as establishing "an inflexible jurisdictional rule, dictating the choice of an inconvenient forum . . . ." The District of New Jersey being the most convenient forum in this case, it seems preferable to exercise *habeas corpus* jurisdiction generously and consider the merits of petitioner's complaint. *See Battle v. Norton,* 365 F.Supp. 925, 927 (D.Conn.1973); *Kinnell v. Warner,* 356 F.Supp. 779, 781 (D.Hawaii 1973). A contrary determination would unreasonably delay final disposition of petitioner's grievances, perhaps rendering the issues moot. *See Augello v. Warden, Metropolitan Correctional Center,* 470 F.Supp. 1230, 1231 n.1 (E.D.N.Y.1979).

▬ Turning now to the merits of petitioner's complaint, I find petitioner's claim that the Parole Commission's delay in affording him a parole hearing frustrated the probable expectations of the sentencing judge cannot be sustained. Petitioner's fifteen-year sentence was imposed pursuant to 18 U.S.C. § 4208(a)(2) (now 18 U.S.C.

§ 4205(b)(2)). Section 4208(a)(2) permits immediate eligibility for parole, giving the Parole Commission complete discretion to determine when a prisoner should be paroled. At the time of petitioner's sentence, Judge Coolahan remarked:

> In imposing these sentences pursuant to Section 4208(a)(2), I make no recommendation to the parole board. I leave the time of the parole and the time of his release entirely to their discretion. You know that they have a right to set the hearing and parole date at an earlier time than usually will take place in the imposition of custodial sentences.

Transcript of Sentence, Cr. No. 281–73, July 28, 1975 at 12. It is clear from this excerpt that Judge Coolahan left the decision as to petitioner's eligibility for parole to the discretion of the Parole Commission, to be exercised in accordance with its regulations.[2]

At the time of petitioner's sentence the Parole Commission was operating under new guidelines, applicable to all prisoners, which base likely parole dates primarily on "salient factors" (rehabilitative potential based on certain personal attributes) and severity of the offense. Paroling Policy Guidelines, 28 C.F.R. § 2.20 (1975). Prior to the implementation of the guidelines, a prisoner sentenced under section 4208(a)(2) was to be given consideration for early parole based on the then-existing criteria, primarily institutional performance. However, the implementation of the guidelines essentially nullified the effect of an (a)(2) sentence:

> The criteria used in setting the targeted release period for a particular individual under the new guidelines include little if any information that sentencing judges do not already have at the time of sentencing. Thus, sentencing judges now

know, as the judge at the time of Wickham's sentencing would have known, given the widespread publicity the guidelines received in the criminal justice system, that the designation of a sentence under the (a)(2) provision would no longer, if it ever did, have any real effect on a prisoner's ultimate release date.

*United States v. Wickham,* 618 F.2d 1307, 1311–12 (9th Cir. 1980) (footnote omitted).

The cases relied upon by petitioner in support of his contention that Judge Coolahan's expectations were frustrated involve sentences which were imposed prior to the use of the guideline system. *See United States v. Salerno,* 538 F.2d 1005, 1009 (3d Cir. 1976); *Grasso v. Norton,* 520 F.2d 27, 35 (2d Cir. 1975); *Garafola v. Benson,* 505 F.2d 1212, 1219 (7th Cir. 1974). For example, in *United States v. Salerno,* 538 F.2d at 1009, the court held that application of the guidelines frustrated Judge Garth's probable expectations that petitioner "be seriously considered for parole only on the basis of his institutional performance and the Board's expectation of his ability to live within the law upon his release." (footnote omitted) Petitioner's sentence in this case was imposed after the implementation of the guideline system, and thus it cannot be argued that the Parole Commission did not give petitioner's parole application meaningful consideration in light of the (a)(2) sentence. Because Judge Coolahan must have had knowledge of the guideline system, and explicitly left the decision as to petitioner's eligibility for parole to the Parole Commission's discretion, it is highly unlikely that he had any expectations as to when petitioner might be eligible for parole, or that his expectations were frustrated.[3]

A defendant sentenced under section 4208(a)(2) generally receives an initial pa-

---

**2.** However, a prisoner sentenced under Section 4208(a)(2) must at least be considered for parole prior to the one-third point in his sentence. *See* 18 U.S.C. § 4205; *United States v. Wickham,* 618 F.2d 1307, 1312 (9th Cir. 1980).

**3.** Petitioner's argument seems to confuse eligibility for parole with the Parole Commission's

failure to accord him an initial classification hearing within 120 days of his incarceration. This failure is an attack upon Parole Commission action, and is analytically distinct from the expectations of the sentencing judge with regard to eligibility for parole.

role board hearing within the first four months of confinement. It is not disputed that petitioner never received his initial hearing until November 8, 1978.[4] Petitioner was considered for parole under the guidelines in effect at that time. *See* Guidelines for Decisionmaking, 28 C.F.R. § 2.20 (1978). At the time of his initial incarceration, petitioner was advised that the parole board would make a determination in his case using the guidelines "as currently published in the Federal Register, dated September 5, 1975." Plaintiff's Exhibit B (Letter from James E. Newman, dated January 27, 1976). Under the 1978 guidelines, petitioner's offense behavior was rated as Greatest I, and he was given a salient-factor score of 2, indicating a range of 85–110 months to be served before release for cases with good institutional program performance and adjustment. Affidavit of Paul P. Aranda, Attachment No. 3 (Notice of Action, dated November 28, 1978). Petitioner claims that the 1975 guidelines, under which he should have been considered, indicate a range of 45 to 55 months for someone with his offense behavior and salient-factor score.[5] Accordingly, petitioner argues that application of the 1978 guidelines to his case, instead of the 1975 guidelines in effect at the time of his sentence, violates the *ex post facto* clause of the United States Constitution.

It is well settled in this circuit that "there is a potential violation of the *ex post facto* clause in the retrospective application of new guidelines promulgated by the United States Parole Commission when they were applied to prisoners who were sentenced prior to enactment of the statute in 1976." *United States v. Ferri,* 652 F.2d 325, at 327; *Geraghty v. United States Parole Commission,* 579 F.2d 238, 266–67 (3d Cir. 1978),

*vacated and remanded on other grounds sub nom, United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

In *Geraghty,* the prisoners were sentenced under section 4208(a)(2) and, consequently, were immediately eligible for parole at the discretion of the parole board in accordance with 18 U.S.C. § 4203. The grant or denial of parole was determined by whether there was a reasonable probability that the prisoners would live and remain at liberty without violating the laws and that such release would not be incompatible with the welfare of society. With the advent of the new guidelines, it was contended that certain prisoners otherwise eligible for parole under the old standards would not be considered for release prior to the new customary release date established by the guidelines.

The Third Circuit concluded that the present parole guidelines, if applied in a fixed and mechanical manner, could violate the *ex post facto* clause of the Constitution:

[I]t is clear that the legislature could not retroactively, without offending the *ex post facto* clause of the Constitution, substantially decrease parole eligibility by legislation. We take it that a similar prohibition applies to an increase in punishment brought about by rule-making, the administrative equivalent of legislation. The legislature cannot, by delegation, escape constitutional limitations on its power. And to maintain that the present parole guidelines enact no substantial limitations on parole eligibility may well be to misinterpret both the legal and practical effects of the guidelines.

*Geraghty v. United States Parole Commission,* 579 F.2d at 266 (footnote omitted). The court remanded the case back to the

---

**4.** Petitioner should have been considered for parole prior to August 23, 1978, the one-third point in his sentence. However, according to the projected full-term date at the time of his initial hearing, the one-third point of petitioner's sentence would have been calculated to be April 10, 1979, and the November 8, 1978 date was thus within the one-third point as calculated at that time. It was not until after his initial hearing that petitioner's full-term date was

changed to August 23, 1986, which probably represented readjustment of credit toward service of his sentence for days spent in custody.

**5.** This figure is subject to dispute, as the Government contests petitioner's computation of his salient-factor score under the 1975 guidelines. This dispute need not be resolved here because of the ultimate disposition of this petition.

district court to determine if the Commission had engaged "in individualized consideration similar to that which it undertook before the guidelines went into effect." *Id.* *See also Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (Florida statute which effectively reduced gain time available to prisoners sentenced prior to enactment of new statute violates *ex post facto* clause, notwithstanding fact that award of gain time is discretionary); *United States v. Ferri,* 652 F.2d 325, at 327; *Rodriguez v. United States Parole Commission,* 594 F.2d 170, 176 (7th Cir. 1979); *Zeidman v. United States Parole Commission,* 593 F.2d 806, 808 (7th Cir. 1979). *But see Warren v. United States Parole Commission,* No. 79–2200, slip op. (D.C.Cir. July 1, 1981) (guidelines merely rationalize exercise of parole authorities' discretion and therefore do not offend *ex post facto* clause); *Rifai v. United States Parole Commission,* 586 F.2d 695, 698 (9th Cir. 1978) (guidelines are merely procedural guideposts without the characteristics of laws); *Ruip v. United States,* 555 F.2d 1331, 1336 (6th Cir. 1977) (guidelines are not law and thus do not come within prohibition against *ex post facto* laws); *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir. 1977) (guidelines do not constitute impermissible *ex post facto* laws since they merely clarify the exercise of administrative discretion without altering any existing considerations for parole release).

■ Petitioner's argument, that the change in customary release dates established by the guidelines between the time of his sentence and his initial parole hearing violates the *ex post facto* clause, presents a colorable argument in this circuit. Petitioner notes that the guidelines in effect at the time of his sentencing were subsequently changed so that in his case the recommended period of incarceration increased from 45–55 months to 85–110 months. The Third Circuit has found that wooden application of the new parole guidelines could violate the *ex post facto* clause. Thus, the inquiry here must focus upon whether in petitioner's case the new guidelines were applied in a fixed and mechanical manner, and whether petitioner received individualized consideration from the Parole Commis-

sion. *Geraghty v. United States Parole Commission,* 579 F.2d at 267.

The record indicates that petitioner received individualized consideration from the Parole Commission. *See generally United States ex rel. Goldberg v. Warden,* 622 F.2d 60, 65 (3d Cir. 1980), *cert. denied,* 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1981); *Daniels v. United States Parole Commission,* 429 F.Supp. 518, 519 (W.D.Pa.1977) (use of guidelines denying parole did not deprive petitioner of right to have case decided on individualized basis). It is clear from the November 8, 1978 hearing summary that petitioner's parole determination took into account factors peculiar to him. The Commission noted that petitioner "was instrumental in the testimony against the organized crime figures in the state of N.J. which reportedly had resulted in a mass conviction of an entire organized crime group." Attachments to Affidavit of Paul P. Aranda, No. 2 (United States Parole Commission Hearing Summary) at 1. The Commission was cognizant of the status of petitioner's codefendants. Petitioner's prior record indicated "8 prior convictions and 8 prior periods of incarcerations . . . . He is an admitted parole and probation violator and the character of his offenses is marked by violence including murder and other types of violent behavior." *Id.* at 1–2. The Commission noted that the institutional progress report dated November 6, 1978 indicated some ten misconduct reports of a serious nature during his initial period of confinement. Mr. Brian, petitioner's representative at the hearing, emphasized his cooperation with the Attorney General of New Jersey, and that because of this cooperation the likelihood of his returning to crime was remote. *Id.* at 2–3. Despite his cooperation with New Jersey officials, the Commission concluded that the "overall acts of the case [were] much to [sic] serious to warrant a decision below the guidelines." *Id.* at 3. The record negates any argument that petitioner received other than individualized consideration. Accordingly, I find no basis for holding that the new guidelines violated the *ex post facto* clause in this case. Further, it is hard to imagine that the Parole Commission, in its discretion,

would have projected an early release date under the old guidelines if it refused to do so under the newer more stringent guidelines.

While it is arguable, because of dispute as to jail-time credit, that petitioner never received a parole hearing prior to the one-third point in his sentence, the record reflects that petitioner never received an initial 120-day hearing despite his January 1976 letter to the Commission which can be construed as a request for an initial hearing. While there is no indication that the Commission acted in other than good faith with regard to petitioner's case, it should have conducted the initial classification hearing. However, under the circumstances, where petitioner was eventually given an initial hearing and no prejudice resulted from the delay because he was given individualized consideration, this court is powerless to afford any *habeas corpus* relief. *See Smith v. United States*, 577 F.2d 1025, 1029 (5th Cir. 1978). Likewise, the purported inequity advanced by petitioner in that those indicted along with petitioner have already served their sentences or been paroled does not entitle petitioner to *habeas corpus* relief. Accordingly, petitioner's motion is denied. The Government will submit an order within 10 days.