**Ex parte Jimmy Michael RUTLEDGE.**

No. 69914.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 16, 1987.

Jimmy Rutledge, pro se.

Robert Huttash, State's Atty., Austin, for State.

OPINION

McCORMICK, Judge.

Before us is an application for a writ of habeas corpus pursuant to Article 11.07, V.A.C.C.P. The application presents the question of whether the 1987 amendment to the Prison Management Act, Article 6184*o*, V.A.C.S. is violative of the Texas or United States Constitution as an ex post facto law.

The Prison Management Act (hereinafter referred to as the PMA) was passed by the 68th Legislature as a stopgap measure to control prison overcrowding. According to the Act, when the Texas Department of Corrections (hereinafter referred to as TDC) reachs an occupancy level of 95%, certain classes of inmates automatically become eligible for a grant of 30 days administrative good time credit.[1] The grant of good time has the effect of advancing the inmate's parole eligibility and parole review date. Eligibility for the grant is based entirely upon the statutory classification of the inmate's offense.

Applicant was convicted of Possession of a Controlled Substance (methamphetamine) and sentenced to 13 years in TDC on November 25, 1986. The offense from which the prosecution resulted occurred on June 23, 1986. Under the version of the PMA in effect at the time of the commission of the offense, applicant would be eligible for the grant of good time on each occasion that the PMA was triggered (by 95% occupancy levels in TDC).

Subsequent to applicant being incarcerated, the 70th Legislature amended the PMA, the result being that a number of offenses were statutorily designated as being ineligible for the grant of good time. Applicant's offense falls within the amended list of ineligible offenses. As a result, appli-

---

1. Needless to say, this is a gross oversimplification of the formula provided in the statute, but it will suffice for our purposes.

cant has been unable to benefit from the disbursement of good time credits and has been forced to resort to this Court for relief. The relief will be granted, for the reasons set forth below.

In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the United States Supreme Court stated that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, and it must disadvantage the offender affected by it. See also, *Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798). We will now apply that analysis to the Prison Management Act.

As to the first question, it is clear that the PMA has been retrospectively applied to applicant. He committed the offense in June in 1986, and the law which is being applied to him did not take effect until February of 1987. Moreover, on its face, the 1987 Amendment contains no savings clause and purports to govern the disbursement of good time to persons whose offenses predate the effective date of the Amendment.

As to the second question, whether the retrospective statute ameliorates or worsens conditions imposed by its predecessor is presented as a federal question. *Weaver v. Graham, supra,* 450 U.S. at 33, 101 S.Ct. at 966; *Lindsey v. Washington, supra,* 301 U.S. at 400, 57 S.Ct. at 798. Our examination of the statute looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual. *Weaver v. Graham, supra; Dobbert v. Florida,* 432 U.S. 282, 300, 97 S.Ct. 2290, 2301, 53 L.Ed.2d 344 (1977); *Lindsey v. Washington, supra,* 301 U.S. at 401, 57 S.Ct. at 799.

In *Warden v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), the Supreme Court held that parole eligibility is part of the "punishment annexed to the crime." The Court stated:

"Only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole. For the convicted prisoner, parole—even with its legal constraints—is a long step toward regaining freedom ... [and] a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the ex post facto clause of Art. I, sec. 9 cl. 3, of the Constitution, of whether it imposed 'greater or more severe punishment than was prescribed by law at the time of the ... offense.'" [citations omitted]

Moreover, in recent cases, the ex post facto clause has been held to forbid retrospective "legislation that operates to 'substantial disadvantage' of prisoners, whether or not the legislation is 'technically an increase in the punishment annexed to the crime'." *Rodriguez v. United States Parole Commission,* 594 F.2d 170 (7th Cir. 1979)[2]; *Weaver v. Graham, supra*[3]; *United States v. Ferri,* 652 F.2d 325 (3rd Cir. 1981).[4] A law may be ex post facto regardless of whether or not it is in some technical sense part of the sentence. *Rodriguez v. United States Parole Commission, supra; Weaver v. Graham, supra.*

In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Court said the ability to assert a constitutional right does not depend upon "whether a governmental benefit is characterized as a

---

**2.** In *Rodriguez v. United States Parole Commission, supra,* the court was concerned with a regulation that eliminated a parole release hearing requirement and in effect denied the petitioner any opportunity to be considered for release on parole. See also, *Graham v. United States Parole Commission,* 629 F.2d 1040 (5th Cir.1980).

**3.** In *Weaver v. Graham, supra,* the Court condemned a statute which prospectively constricted the petitioner's opportunity to shorten his

time in prison by reducing the amount of credit he could automatically acquire for good conduct.

**4.** In *United States v. Ferri, supra,* the Third Circuit held that application of parole guidelines to a prisoner sentenced before their enactment violated the ex post facto clause because the guidelines delayed for up to 120 days his initial hearing and, thus, his eligibility or opportunity for parole release.

'right' or a 'privilege.'" *Id.*, 408 U.S. at 481, 92 S.Ct. at 2600, quoting *Graham v. Richardson*, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971). Rather, the relevant inquiry should be whether the denial of a benefit would amount to a significant loss to the claimant. *Id.* In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that nothing in the Constitution requires the granting of good time credit, but once a state adopts good time provisions and a prisoner earns credit, deprivation of the credit constitutes a substantial sanction, and a prisoner properly can claim summary deprivation of liberty without due process of law. See also, *Ex Parte Patterson*, 740 S.W.2d 766 (Tex.Cr.App.1987).

Similarly in *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967), aff'd, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), the court struck down a statute depriving parole violators of accumulated good time upon their return to prison, where applied to a prisoner who had been sentenced before the law went into effect. Since the possible loss of good time for parole violation was in effect a potential lengthening of the sentence, the court held that imposition of such a penalty was an impermissible ex post facto law. The court declared: "[W]e see no distinction between depriving a prisoner of the right to earn good conduct deductions and the right to qualify for, and hence earn, parole." Each, to quote *In re Medley, supra* [134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835], "materially alters the situation of the accused to his disadvantage." The Supreme Court affirmed without opinion.

In *Shepard v. Taylor*, 556 F.2d 648 (2d Cir.1977), the court considered the applicability of parole guidelines to prisoners sentenced under the Youth Corrections Act. The guidelines gave substantial consideration to the offense severity rating, a factor which was excluded from the statute in effect at the time of the sentencing of the defendant, and the court determined that application of those guidelines to the defendant would be unconstitutional. The court held that "official post-sentence ac-

tion that delays eligibility for supervised release runs afoul of the ex post facto proscription." See also, *Geraghty v. United States Parole Commission*, 579 F.2d 238 (2d Cir.1978), vacated, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

This Court has addressed an analogous circumstance in the pre-*Weaver v. Graham* decision styled *Ex Parte Alegria*, 464 S.W. 2d 868 (Tex.Cr.App.1971). In that case, the defendant was convicted and a life sentence was imposed in 1961. The law in effect at the time of the commission of the offense authorized eligibility for parole at the cumulation of fifteen years of credit. In 1967, the statute was amended to extend the period of time for parole eligibility to twenty years. This Court, applying both the federal and state constitutions, found application of the amended law to the defendant, who committed the offense prior to enactment, violative of the ex post facto proscription. *Id.* at 874.

In accord with the previously cited authorities, we think it clear that the 1987 Amendment to the PMA clearly acts to the substantial disadvantage of the applicant (whether or not it is technically considered an increase in the punishment). In light of this, we find that retrospective application of the 1987 Amendment is unconstitutional as an ex post facto law.

In conclusion, the two elements of *Weaver v. Graham, supra,* have been satisfied. The 1987 Amendment to the PMA is retrospective as the instant offense occurred on June 23, 1986, since the 1987 Amendment applied to the offense did not take effect until February 20, 1987. Second, the applicant is disadvantaged by the time he would have to serve in prison instead of the possibility of being allowed to go at liberty and pursue a livelihood within the confines of parole. *Ex Parte Alegria, supra.* See also, *Knuck v. Wainwright*, 759 F.2d 856 (11th Cir.1985). Therefore, under either the federal or state constitution, retroactive application of the 1987 amendment of the PMA is violative of the ex post facto clause and the applicant's eligibility for parole is to be determined in accordance with the version of Article 6184*o*, V.A.C.S., in

effect at the time of the offense for which he is convicted.

■ This holding does not entitle the applicant to outright release or immediate release on parole. The decision to release or not release an inmate of the Texas Department of Corrections, even though eligible for parole, remains within the sound discretion of the Board of Pardons and Paroles.

CLINTON, Judge, concurring.

Through judicial construction in *Calder v. Bull,* 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798), the Supreme Court of the United States held the constitutional prohibition against an ex post facto law embraced only criminal or penal laws. That interpretation was later accepted by Texas courts. See *Bender v. Crawford,* 33 Tex. 745 (1871).

While I join the opinion of the Court holding that as applied to applicant the 1987 amendment is an ex post facto law and, therefore, violative of both the federal and state Constitutions, I write to point out that our own constitutional prohibition against such laws is broader than the restrictive construction given "ex post facto law." Under Article I, § 16 there is also a ban on any "retroactive law." *Ex parte Alegria,* 464 S.W.2d 868 (Tex.Cr.App.1971), quoting at length statements to that effect from the Interpretive Commentary following § 16. *Id.,* at 872.

Including "retroactive law" in § 16 "evidences an intention to place a further restriction on the power of the legislature; and it must be held to protect every right, although not strictly a right to property, which may accrue under existing laws prior to the passage of any, which, if permitted a retroactive effect, would take away that right. A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized and secured by law." *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, at 253 (1887). See also *Turbeville v. Gowdy,* 272 S.W. 559, 561[4] (Tex. Civ.App.—Fort Worth 1925).

On that constitutional basis also, applicant is entitled to the relief granted by the Court.

MILLER and DUNCAN, JJ., join in this opinion.