John J. RODRIGUEZ,
Petitioner-Appellee,

v.

UNITED STATES PAROLE COMMIS-
SION and Metropolitan Correctional
Center, Robert Elsea, Warden, Respon-
dent-Appellants.

No. 78-2051.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1979.

Decided March 20, 1979.

Rehearing Denied May 1, 1979.

Edward J. Moran, Asst. U. S. Atty., Chi-
cago, Ill., for respondents-appellants.

Robert K. Mayer, Chicago, Ill., for peti-
tioner-appellee.

Before SPRECHER, TONE, and WOOD,
Circuit Judges.

TONE, Circuit Judge.

The issue raised on this appeal is whether
the *ex post facto* clause of the United
States Constitution, Art. I, § 9, is violated
by the retroactive application of an admin-
istrative regulation that denies a prisoner
sentenced under 18 U.S.C. § 4205(b)(2) any
meaningful consideration for parole. The
district court answered in the affirmative;
we agree and therefore affirm.

Petitioner John Rodriguez was prose-
cuted and convicted in early 1977 of having
made false statements to a government
agency and having used the mails to de-
fraud in 1974 and 1975. The charges were
presumably laid under 18 U.S.C. §§ 1001,
1341.[1] On April 21, 1977, he was sentenced
to a maximum term of two years imprison-
ment under then 18 U.S.C. § 4208(a)(2), now
18 U.S.C. § 4205(b)(2), which meant he was
eligible for parole immediately.[2] Rodriguez

1. The briefs and record describe Rodriguez' of-
fenses as making false statements and mail
fraud without referring to any statute.

2. Section 4205(b)(2) provides that
Upon entering a judgment of conviction, the
court having jurisdiction to impose sentence,

began serving his sentence on May 12, 1977, at the federal penitentiary at Terre Haute, Indiana, and received an "initial parole determination" hearing about three months later, on August 15, 1977. On August 25, 1977, the Parole Commission denied Rodriguez' petition for release and determined that he should serve his maximum sentence.[3] Later, Rodriguez was transferred to the Metropolitan Correctional Center in Chicago where he applied for a review hearing. Relying on the Parole Commission's new regulation, the officials there refused to schedule such a hearing. Rodriguez then filed this habeas corpus action. The district court held that his rights under the *ex post facto* clause had been violated and ordered him released unless the commission held a meaningful hearing within 30 days. When the commission appealed, he was released on bond, pending the outcome of the appeal.

## I.

Before 1976 the parole statute, 18 U.S.C. §§ 4201, *et seq.* (1970), did not prescribe "when, or how often" a prisoner was entitled to parole consideration. *See* 42 Fed. Reg. 31785 (June 23, 1977). For prisoners sentenced under then 18 U.S.C. § 4208(a)(2) (1970), the Board of Parole, now the Parole Commission,[4] adopted the practice of conducting an initial hearing shortly after commitment. *See Garafola v. Benson,* 505 F.2d 1212, 1215 (7th Cir. 1974). Also, as we recounted in that opinion,

> In 1973 the Board of Parole adopted a table of guidelines for use in deciding the length of time a prisoner should serve before he is released on parole. 38 F.Reg. 31942 (1973), 28 C.F.R. § 2.20 (Rev. July 1, 1974).

*Id.* at 1214. In addition to the guideline factors, however, the Board's rules provided that " 'changes in motivation and behavior,' 'institutional experience' " and "the evaluation made at the hearing [were] factors in the parole decision-making process of the Board." *Id.*

Because the initial hearing for those sentenced under § 4208(a)(2) was held so soon after commitment, there was little opportunity to demonstrate any change in motivation or behavior and very little institutional experience for the board to evaluate. As a consequence prisoners sentenced under § 4208(a)(2) were rarely, if ever, granted parole at that initial hearing. *See id.* at 1215; *Grasso v. Norton,* 520 F.2d 27, 35 (2d Cir. 1975); *id.* 38, 39 (Feinberg, concurring). Indeed, the board advised prisoners that they should not even expect parole at the initial hearing. *Garafola v. Benson, supra,* 505 F.2d at 1215 n.2. Yet, for many of the prisoners who received an initial hearing shortly after commitment, usually those whose sentences were relatively short, a further hearing was dispensed with altogether or not held until after the one-third point in the sentence, with the result that further parole consideration or parole was either denied or postponed beyond the one-third point. *Id.* at 1215 & n.3.

Ironically, prisoners who were not eligible for parole until they had served one-third of their sentences, having been sentenced under former 18 U.S.C. § 4202, stood a better chance of being paroled at that time than prisoners sentenced under § 4208(a)(2). For them the initial parole hearing was held at

when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, . . . (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the [United States Parole] Commission may determine.

**3.** The prison officials at Terre Haute scheduled Rodriguez for a review hearing to be held in January, 1978. On December 7, 1977, Rodriguez signed a "waiver" of this hearing. The commission does not, however, rely on this waiver. Its counsel stated at oral argument, "With respect to the waiver, it is not the position of the . . . Parole Commission that it's [an] irrevocable waiver. It can be reinstituted by filling out the proper forms." The commission concedes, in effect, that even if no waiver had been signed, or if Rodriguez had revoked it, he would not have been given a one-third hearing.

**4.** The Parole Commission and Reorganization Act, 90 Stat. 219, renamed the former Board of Parole.

the one-third point in their sentences, and it was a meaningful one, for by then substantial institutional experience with the prisoner had been gained and he might hope to demonstrate changes in motivation and behavior. "In a substantial number of cases, the prisoner [was] granted a parole at this initial hearing." *Id.* at 1215.

Thus a provision that was intended to make immediate parole possible was applied by the board in such a way that it was likely that a prisoner to whom the sentencing judge made it applicable would either not be paroled at all or would be paroled at a later point in his sentence than a prisoner who had received a sentence of the same length under the apparently less favorable § 4202. This court and others held that the board's practice was contrary to the purposes of § 4208(a)(2) and that a prisoner sentenced under the provision was entitled to a meaningful parole hearing prior to the one-third point in his sentence. *E.g., id.* at 1218–1219; *Grasso v. Norton, supra,* 520 F.2d at 35. In *Bijeol v. Benson,* 513 F.2d 965 (7th Cir. 1975), the relief granted to the petitioners in *Garafola v. Benson* was extended to all prisoners sentenced under § 4208(a)(2) who were confined at the Terre Haute Penitentiary. In response to these decisions, the board adopted a regulation requiring a review hearing for any prisoner sentenced under § 4208(a)(2) at the one-third point of his sentence. *See* 28 C.F.R. § 2.14(e) (1977).

After Rodriguez had committed the offenses for which he was convicted, but before he was sentenced, Congress adopted the Parole Commission and Reorganization Act, 90 Stat. 219, 18 U.S.C. §§ 4201, *et seq.* For prisoners sentenced under the successor of former § 4208(a)(2), § 4205(b)(2), the Act requires the United States Parole Commission, as the former board is now named, to conduct an initial hearing within 120 days of commitment, 18 U.S.C. § 4208(a). For all prisoners the Act requires the commission to conduct review hearings "not less frequently than 18 months," if the maximum sentence imposed is greater than one year but less than seven years. 18 U.S.C. § 4208(h). Viewing §.4208(h) as a rejection

of the one-third hearing requirement, the commission filed notice of a proposal to eliminate 28 C.F.R. § 2.14(e), 42 Fed.Reg. 13305, 13306 (March 10, 1977).

After considering the comments received on the proposal, the commission decided to eliminate § 2.14(e), 42 Fed.Reg. 31785 (June 23, 1977). The commission seems to have tried to avoid the unfairness of retroactively eliminating the one-third hearing for those who had already been scheduled for such hearings:

> The rule change will be prospective only, that is prisoners now continued for one-third hearings, will receive their hearings as scheduled, but prisoners initially heard after August 1, 1977 will not be continued for one-third hearings.

*Id.* For prisoners whose initial hearings were held after August 1, 1977, as was that of Rodriguez, the next review could be as late as 18 months from the date of the hearing, without regard to the one-third points of their sentences.

The commission was aware that a second hearing 18 months after the first would be of practically no benefit to prisoners who had received "short 'indeterminate' sentences (*e. g.,* two years). The only opportunity for these prisoners to be paroled would be at an initial hearing conducted only three or four months after confinement has begun." *Id.* Nevertheless, the commission expressed its belief

> that Congress intended this result. There is little reason to assume the probability of a significant change in circumstances occurring at some fractional point of a short sentence; only with longer sentences does the probability of such a change justify continuous review. Moreover, the Commission's criteria for parole consideration expressly assume continued good behavior, so that a prisoner is not penalized for being unable to show a record of good conduct at the initial parole hearing. In the extraordinary case §§ 2.15 and 2.28 permit the reopening of a previous decision.

*Id.* It is by no means clear that the commission's view of what Congress intended is correct. Section 4208(h)(1) does not proscribe hearings more frequent than every 18 months; it simply requires the commission to conduct hearings at least that frequently.

The legislative history of the Act makes it plain that Congress intended the commission to continue to consider a prisoner's institutional behavior in determining whether parole release is warranted:

> First, it is the intent of the Conferees that the Parole Commission reach a judgment on the institutional behavior of each prospective parolee. It is the view of the Conferees that understanding by the prisoner of the importance of his institutional behavior is crucial to the maintenance of safe and orderly prisons.

H.R.Rep.No.94–838 (Conference Report), 94th Cong., 2d Sess. 25, reprinted in [1976] *U.S.Code Cong. & Admin.News,* pp. 351, 358. Whether the commission's "criteria" establishing continued good behavior as a prerequisite to parole release is adequate in light of this expression of intent may be subject to some doubt; for presumably behavior less than "extraordinary" should also be considered in reaching a judgment on whether the guidelines ought to be dispositive. The answer to that question, however, must await another day; the only issue before us is whether denial of Rodriguez' only practical opportunity for parole by applying a regulation not in effect at the time of his offense is proscribed by the *ex post facto* clause.[5]

## II.

The Constitution prohibits Congress from passing any *"ex post facto* Law." Art. I, § 9. As noted in *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977), the "cases have not attempted to precisely delimit the scope of this Latin phrase, but have instead given it substance by an accretion of case law." Nevertheless,

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*

*Dobbert v. Florida, supra,* 432 U.S. at 292, 97 S.Ct. at 2297, 2298, *quoting Beazell v. Ohio,* 269 U.S. 167, 169–170, 46 S.Ct. 68, 70 L.Ed. 216 (1925). Thus, although the breadth of the clause may not be well defined, its core is sharp and clear.

### A.

The first and third types of laws described in *Dobbert* as coming within the proscription of the *ex post facto* clause are obviously not involved here, and therefore the question becomes whether the commission's regulation amounts to a "statute . . . which makes more burdensome the punishment for a crime." The first part of this inquiry, whether the regulation involved here is equivalent to a "statute" for purposes of the clause, need not detain us long. When Congress has delegated to an agency the authority to make a rule instead of making the rule itself, the resulting administrative rule is an extension of the statute for purposes of the clause. What Congress cannot do directly, it cannot do by delegation. *See, e. g., Geraghty v. United States Parole Commission,* 579 F.2d 238, 266 & n.143 (3d Cir. 1978), *cert. granted,* —— U.S. ——, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979). The Act expressly authorizes the commission to adopt "rules and regulations as are necessary to carry out a national parole policy." 18 U.S.C. § 4203(a)(1). "Legislative" rules adopted by the commission pursuant to statutory power have the force and effect of law. *See generally Joseph v. United States Civil Service Commission,* 180 U.S.App.D.C. 281, 295 n.26, 554 F.2d 1140,

---

5. As we noted in the text the Act does not require the elimination of the one-third hear-

ings, and therefore we consider only the change in the regulations.

1154 n.26 (1977); Davis, *Administrative Law of the Seventies* § 5.03 at 147 (1976).

The regulation eliminating the one-third hearing was adopted pursuant to the commission's rulemaking authority under 18 U.S.C. § 4203(a)(1), *see* 42 Fed.Reg. 31785 (June 23, 1977); 42 Fed.Reg. 13305 (March 10, 1977), and is legislative. In effect, the commission has adopted the minimum review hearing frequency prescribed in § 4208(h)(1) as the maximum review hearing frequency, absent extraordinary circumstances. This rule must be viewed as tantamount to a statute for the purpose of determining whether its application to Rodriguez runs afoul of the *ex post facto* clause. *Cf. Love v. Fitzharris,* 460 F.2d 382, 385 (9th Cir. 1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973) (holding that a change in the state parole authority's interpretation of the relevant eligibility provisions was within the reach of the clause because "[a]bsent a court pronouncement on the matter" the agency interpretation had "the force and effect of law").

### B.

The final inquiry is whether application of the new rule to Rodriguez "makes more burdensome the punishment for a crime, after its commission." *Dobbert v. Florida, supra,* 432 U.S. at 292, 97 S.Ct. at 2297. The *ex post facto* clause of the Constitution forbids legislation that operates to the "substantial disadvantage" of prisoners, whether or not the legislation is "technically an increase in the punishment annexed to the crime." *Lindsey v. Washington,* 301 U.S. 397, 401–402, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *see In re Medley,* 134 U.S. 160, 171, 10 S.Ct. 384, 33 L.Ed. 835 (1890); *Geraghty v. United States Parole Commission, supra,* 579 F.2d at 264; *Greenfield v. Scafati,* 277 F.Supp. 644 (D.Mass.1967) (3-judge court), *summarily aff'd,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968).

In *Lindsey v. Washington,* the defendants were convicted of grand larceny in a state court. At the time of the offense the penalty prescribed was imprisonment "for not more than fifteen years"; no minimum prison term was set, but under such circumstances the sentencing judge was required to fix a minimum term of not less than six months and not more than five years. Also, the state parole board was authorized to release any prisoner after expiration of his minimum term of imprisonment. By the time the defendants were to be sentenced, however, the state legislature had amended the relevant statutes requiring the sentencing court to impose the maximum sentence prescribed by law and giving the board authority to determine the actual length of imprisonment after the prisoners had served six months of any sentence imposed. If during imprisonment any prisoner violated the rules of the prison, the board was authorized to rescind any prior order fixing a release date and extend the term of actual confinement up to the maximum imposed by the court. Further, even after release on parole either the board or the governor of the state was authorized to revoke parole at their discretion and return the parolee to prison to serve the balance of his sentence. The defendants in *Lindsey* were sentenced under the new statute to maximum terms of fifteen years.

Even though they could have been sentenced to fifteen years imprisonment under the old statute, the Court held that application of the new statute offended the *ex post facto* clause because the "standard of punishment adopted by the new statute is more onerous than that of the old." *Lindsey v. Washington, supra,* 301 U.S. at 401, 57 S.Ct. at 799. Whether or not the defendants would have received shorter sentences under the former statute was immaterial. *Id.* Nor was it material whether or not the new statute could be viewed as technically an increase in punishment:

> We need not inquire whether this is technically an increase in the punishment annexed to the crime, *see Calder v. Bull* . . . 3 Dall. [3 U.S.] 386, 390, [1 L.Ed. 648] [1798]. It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the fifteen-year term.

*Id.* at 401–402, 57 S.Ct. at 799. If the retroactive deprivation of all opportunity to receive a shorter sentence violated the *ex post facto* clause, even though it was the parole board which made the ultimate decision on release, it follows *a fortiori* that deprivation of all opportunity to be released on parole also comes within the scope of that clause. *See, e. g.; Ruip v. United States,* 555 F.2d 1331, 1335 (6th Cir. 1977).

As interpreted in *Garafola v. Benson, supra,* the predecessor to § 4205(b)(2) required that a prisoner sentenced to a short term thereunder be given a meaningful opportunity for parole release, prior to the one-third point, and *a fortiori* prior to the expiration, of his sentence. At the time of the offense for which Rodriguez was convicted, any "punishment" prescribed included such an opportunity for parole release.[6] The retroactive elimination of this opportunity is plainly to his "substantial disadvantage."[7]

The legislative history of the Parole Commission and Reorganization Act indicates that Congress viewed the possibility of parole as an element of the "punishment" annexed to any crime: "Determinations of just punishment are part of the parole process." H.R.Rep.No.94–838 (Conference Report), 94th Cong., 2d Sess. 26, reprinted in [1976] *U.S.Code Cong. & Admin.News,* pp.

351, 358. For most prisoners, it is the Parole Commission, and not the sentencing judge or Congress, who determines what any offender's "punishment" will be:

Parole is an extension of the sentencing process. The sentences of nearly all offenders include minimum and maximum terms, ordinarily set by the sentencing court within a range of discretion provided by statute. The final determination of precisely how much time an offender must serve is made by the parole authority.

S.Rep.No.94–369, 94th Cong., 2d Sess. 15–16, reprinted in [1976] *U.S.Code Cong. & Admin.News,* pp. 335, 337.[8]

In *Warden v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), the Court held, among other things, that the "no-parole" provision of 26 U.S.C. § 7237(d) (1964 ed. and Supp. V) was a "penalty, forfeiture, or liability" within the meaning of 1 U.S.C. § 109, and therefore the repeal of § 7237(d) did not make prisoners sentenced under that provision eligible for parole. The Court relied primarily on the legislative history of § 7237(d), which indicated "that Congress meant ineligibility for parole to be treated as part of the 'punishment,'" *id.* at 662, 94 S.Ct. at 2537, annexed to the crimes for which the prisoners in that case had been convicted. Thus, it appears not only

6. The sentencing judge of course determines which of the parole eligibility standards will be applicable and no offender has any right to be sentenced under any particular provision. The same is true as to the length of sentence. Nevertheless, in applying the *ex post facto* clause the relevant date is that on which the offense was committed.

7. The commission contends that the change was merely "procedural" and therefore not within the scope of the *ex post facto* clause. See *Dobbert v. Florida, supra,* 432 U.S. at 293–294, 97 S.Ct. 2290. The commission seeks to support this contention by the statement in *Christopher v. Board of Parole,* 589 F.2d 924, 932 (7th Cir. 1978), that "*Garafola* was merely a procedural decision." That characterization must be read in the light of the issue before the court, which was whether the board could properly give greater weight to a prior criminal record than to institutional behavior in deciding to deny parole. *Garafola* was characterized as "procedural" because, although it established

the right to a meaningful hearing, it did not deal with the weight the board should give to various factors in deciding whether to grant parole. But neither the right to a meaningful one-third hearing nor the abrogation of the right is "procedural" as that term is used in *ex post facto* law. The elimination of the one-third hearing did not simply alter "the methods employed," *see Dobbert v. Florida, supra,* 432 U.S. at 293–294, 97 S.Ct. 2290, in determining whether an eligible prisoner would be released on parole. Rather, as noted in the text, this change denied Rodriguez any opportunity to be released or even to be considered for release on parole.

8. *See also* H.R.Rep.No.94–838, *supra,* at 19–20 in which the passage quoted in the text is substantially repeated, except for the first sentence, which is omitted. For present purposes the deletion is not significant, *but cf. Geraghty v. United States Parole Commission, supra,* 579 F.2d at 257–259, since the same idea is necessarily implicit in the third sentence.

that Congress views the possibility of parole as an element of "punishment," but also that Congress sometimes denies that possibility to make more severe the punishment technically prescribed.

■ In *Warden v. Marrero,* the Court also pointed out two "additional reasons for believing that the no-parole provision is an element of . . . punishment":

> First, only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole. . . . Second, a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the *ex post facto* clause of Art. I, § 9, cl. 3, of whether it imposed a greater or more severe *punishment* than was prescribed by law at the time of the . . offense, . . . .

*Id.* at 662–663, 94 S.Ct. at 2538 (emphasis in original; citations omitted). Eligibility in the abstract is useless; only an unusual prisoner could be expected to think that he is not suffering a penalty when even though he is eligible for parole and might be released if granted a hearing, he is denied that hearing. Denial of any meaningful opportunity for parole by retroactive application of the Parole Commission's rule violates the *ex post facto* clause of the federal Constitution. *See also Geraghty v. United States Parole Commission, supra,* 579 F.2d at 265; *Love v. Fitzharris, supra,* 460 F.2d at 384; *Greenfield v. Scafati, supra,* 277 F.Supp. at 646.[9]

The Parole Commission contends that the Act and the notice of the proposed elimination of the one-third hearing are "operative facts," which gave Rodriguez notice that he would not be entitled to such a hearing. *See Dobbert v. Florida, supra,* 432 U.S. at 297–298, 97 S.Ct. 2290. First, as noted above, the Act itself does not require the elimination of the one-third hearing, and therefore it gave no notice of the elimination of the hearing. Second, unless one is to assume that the notice and comment procedures required by the Administrative Procedure Act are nothing more than empty formality, the commission's notice of proposed rulemaking cannot be regarded as notice that the hearings would be eliminated. Third, although parole eligibility is determined as of the date of sentencing for some purposes, *see Warden v. Marrero, supra,* 417 U.S. at 658, 94 S.Ct. 2532, the *ex post facto* clause looks to the punishment annexed at the time the crime was committed. *E. g., Dobbert v. Florida, supra,* 432 U.S. at 292, 97 S.Ct. 2290; *see also* note 5, *supra.* Consequently, the "operative facts" relied on by the commission, which did not come into existence until after the offense was committed, cannot satisfy the requirements of the *ex post facto* clause.

Accordingly, the judgment of the district court is affirmed. The 30 days within which the commission may hold a hearing as an alternative to releasing Rodriguez shall begin to run the day this court's mandate is issued.

Affirmed.

---

9. Our decision is not inconsistent with *Ruip v. United States, supra,* or the *dictum* in *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir. 1977), indicating agreement with the holding in *Ruip.* For in *Ruip* the court simply held that application of the 1973 Parole Commission guidelines to a prisoner sentenced before the guidelines were adopted did not come within the scope of the *ex post facto* clause because the guidelines were merely "guideposts which assist the Parole Commission . . . in exercising its discretion." 555 F.2d at 1335.

In *Zeidman v. United States Parole Commission,* 593 F.2d 806 (7th Cir. 1979) decided today, we did not reach the issue.