**Robert JOOST, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

**No. 80–3110.**

United States District Court,
D. Kansas.

Feb. 4, 1982.

Robert Joost, pro se.

James J. Marquez, U. S. Atty., Topeka, Kan., for respondent.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Petitioner herein, an inmate of the United States Penitentiary, Leavenworth, Kansas, having been granted leave to proceed *in forma pauperis,* filed with the Clerk of the Court this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. A rule to show cause issued to which respondent filed an answer and return, and petitioner has submitted his traverse. Having examined all pleadings and materials filed, the Court makes the following findings and Order.

On January 8, 1976, petitioner was convicted in the United States District Court for the District of Connecticut of conspiracy to violate the rights of a citizen, death resulting, and was sentenced to a twenty-five year regular adult prison term. The initial hearing on his application for parole was held at the institution on September 4, 1979. The examiner panel recommended that a presumptive parole date be set of June 3, 1983. However, the Regional Commissioner disagreed with the panel's recommendation and referred the case to the National Commissioners for consideration. The National Commissioners advised petitioner on October 23, 1979, of their decision to continue his case for a ten-year reconsideration hearing in September, 1989. This decision was affirmed on administrative appeal. The reasons given for the decision were:

Your offense behavior has been rated as Greatest II severity because the offense behavior resulted in the death of an individual. You have a salient factor of 3. You have been in custody a total of 75 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 100 + months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that

your release at this time would depreciate the seriousness of your offense behavior. Commission guidelines for Greatest II severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon a comparison of the relative severity of your offense behavior with the offense behaviors and time ranges specified in the Greatest I severity category.

As required by law, you have also been scheduled for a statutory interim hearing during October 1981.

No procedural irregularities in these processes are alleged or indicated. Available administrative remedies have been exhausted.

Petitioner claims that (1) the sentencing judge's intentions have been thwarted by the Commission's refusal to grant parole at the one-third point of his sentence, (2) the statutory and regulatory parole scheme unconstitutionally allows the Commission to usurp the sentencing power of the judiciary, and (3) the Commission's refusal to parole petitioner at the one-third point of his sentence increased the intended punishment in contravention of the *ex post facto* clause of the United States Constitution.

In an earlier Order dated August 12, 1980, we rejected petitioner's claim that he is entitled to habeas corpus relief because the sentencing judge intended that he be released at the one-third point of his sentence. We cited *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), in which the United States Supreme Court held that the sentencing judge has no enforceable expectations with regard to the actual release of a sentenced defendant short of the statutory term. The order to show cause was issued to facilitate our determination of petitioner's constitutional claims of violations of the separation of powers doctrine and the *ex post facto* clause.

More specifically stated, petitioner's claims are that it is the judiciary's constitutional province to determine the punishment imposed upon an individual criminal defendant; that the sentencing judge, by sentencing petitioner under the option set forth in 18 U.S.C. § 4205(a) manifested his expectation and intent that petitioner would be released on parole after serving one-third of his sentence provided only that he maintained good institutional adjustment; and that the denial of his parole application at the one-third point based not upon institutional performance but upon factors already considered by the sentencing judge effectively increased the punishment intended by the Court and amounted to a usurpation of the sentencing function.

Since we issued a show cause order in this case, we have discovered that several courts, in addition to the Second Circuit in *Moore v. Nelson*, 611 F.2d 434 (2nd Cir. 1979), have held that the Parole Commission and Reorganization Act, 18 U.S.C. § 4201, *et seq.*, [hereinafter referred to as PCRA] does not amount to an unconstitutional delegation or usurpation of judicial power. *Page v. United States Parole Commission*, 651 F.2d 1083 (5th Cir. 1981); *Priore v. Nelson*, 626 F.2d 211 (2d Cir. 1980); *Wilden v. Fields*, 510 F.Supp. 1295 (W.D.Wis.1981); *Hawkins v. United States Parole Commission*, 511 F.Supp. 460 (E.D.Va.1981); *see also Hayward v. United States Parole Commission*, 659 F.2d 857 (8th Cir. 1981). We agree with this conclusion; however, we have been unable to locate a case which supported its conclusion with substantial discussion. For this reason, we include the following comments.

The constitutional challenges to the PCRA proffered by petitioner and similar challenges scrutinized in *Geraghty v. United States Parole Commission*, 579 F.2d 238 (3rd Cir. 1978) *vacated and remanded on class action issue*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), appear to rest upon two basic misperceptions concerning sentencing and parole. First, we must eradicate petitioner's imprecise perception of the judiciary's role in punishment of criminal offenders. At the outset, we note that there is no constitutional provision which explicitly provides or has been interpreted as providing that a judge must set or be able to predict the date of a defendant's

actual release from prison whenever that might occur prior to the maximum term imposed. Congress has traditionally defined what behavior is criminal and prescribed the range of punishments to be imposed for such crimes. The sentencing court has traditionally been delegated the authority to select from the prescribed range the most appropriate sentence on consideration of the individual defendant and circumstances. To this day, the court designates in the judgment and commitment order the maximum time an individual may be required to serve for his crime. Furthermore, by selecting one of the statutory sentencing options setting the time of parole eligibility the court effectively designates the minimum term of imprisonment. The court then commits the defendant to the custody of the Attorney General for the time of the sentence. The sentence is executed by the Attorney General and his delegates within the executive branch of Government. As part of the responsibility to execute sentences, Congress has permitted executive authorities to ameliorate punishment by awarding statutory good time. Another traditional method of amelioration of punishment is executive pardon. Parole is technically nothing more nor less than another form of amelioration or mitigation of punishment authorized and defined by Congress and carried out by an executive agency. The PCRA, effective in March, 1976, has not substantially altered this overall scheme. We conclude that no function entrusted to the judiciary by the United States Constitution has been delegated to the United States Parole Commission.

The core of petitioner's complaint is that the Commission relied upon his offense severity, a factor fully considered by the sentencing court, to deny parole beyond the time of release predicted by the sentencing court. Petitioner evidently intends this Court to infer that the sentencing judge imposed a twenty-five year sentence under the § 4205(a) option because he believed it would result in petitioner serving eight and one-third years in prison given good institutional adjustment. The simple answer to this is that the judge could have, but did not, sentence petitioner to eight and one-third years.

Federal judges have long been aware of the limitations on their sentencing powers with regard to execution of a sentence. Judges have no authority to designate the geographical location or security level of the institution in which the defendant is to serve his term. Their recommendations concerning such options need not be followed by the Bureau of Prisons. Amelioration of punishment has never been purely a judicial function, and, as with other options of sentencing execution, the judge has no enforceable expectations with regard thereto short of the statutory term.

The second pervasive misperception regarding parole is that the decision to grant or deny parole is part of the punishment annexed to the crime. This is the theory underlying petitioner's claim of a violation of the *ex post facto* clause. It is technically incorrect to perceive the denial of parole by the Commission as punishment. It is necessary here to distinguish eligibility for parole from the decision whether or not to grant parole. The time of federal parole eligibility is set as part of the sentence. Thus, statutory ineligibility for parole or delayed eligibility under the federal sentencing statutes has been deemed part of the punishment and cannot constitutionally be adversely altered subsequent to sentencing. On the other hand, the decision to grant or deny parole is made long after sentence has been entered and the prosecution terminated. *Bradley v. United States*, 410 U.S. 605, 611, 93 S.Ct. 1151, 1155, 35 L.Ed.2d 528 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). The distinction was made clear in *Warden v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), where it was held that a statutory no-parole provision was an element of a defendant's punishment. The Court in *Marrero* in discussing a footnote in *Bradley v. United States, supra*, clarified that the district judge, as part of his sentencing function, may determine when the defendant will become eligible for parole consideration but that the decision

whether release on parole should be granted is made by the Parole Commission after the prosecution has terminated. In its own footnote the Court said:

> The statement in *Morrissey v. Brewer* ... (*supra*, [408 U.S.] at 480 [92 S.Ct. at 2599]) ... that '[p]arole arises after the end of the criminal prosecution, including imposition of sentence' was addressed to the decision determining the time of release on parole as distinguished from the decision determining eligibility. 417 U.S. at 659, n. 9, 94 S.Ct. at 2536, n. 9.

*Dioguardi v. United States*, 587 F.2d 572 (2d Cir. 1978.)

■ It follows that the denial of parole to one who is eligible cannot under traditional principles be said to increase the punishment and thereby violate the *ex post facto* clause. The maximum time which a prisoner at sentencing is committed to the custody of the Attorney General is unchanged by the grant or denial of parole. The putative parolee must always be released prior to expiration of his maximum term. Moreover, he may lawfully be required to remain in prison until expiration of such term. The unassailable fact that the prisoner perceives the denial of parole as punishment does not establish that it is. Nor does the fact that many judges for a time after enactment of the PCRA mistakenly believed they could calculate and impose a sentence which would conclusively predetermine the time of release on parole impugn the Act as an unconstitutional delegation of judicial power.

■ In more recent cases, the *ex post facto* clause has been held to also forbid retrospective "legislation that operates to 'substantial disadvantage' of prisoners, whether or not the legislation is 'technically an increase in the punishment annexed to the crime'." *Rodriguez v. United States Parole Commission*, 594 F.2d 170, 174 (7th Cir. 1979), *citing Lindsey v. Washington*, 301 U.S. 397, 401–402, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *see also United States v. Ferri*, 652 F.2d 325 (3rd Cir. 1981). Moreover, a law may be *ex*

*post facto* regardless of whether or not it is in some technical sense part of the sentence. *Rodriguez v. United States Parole Commission, supra; Weaver v. Graham, supra.* Nevertheless, applying the cited cases, we find no *ex post facto* violation under the facts alleged by petitioner.

This is so first and foremost because this Court has held that the Commission's guidelines are not "laws" for purposes of the *ex post facto* prohibition. *Smaldone v. United States*, 458 F.Supp. 1000 (D.Kan.1978); *in accord: Leaphart v. Benson*, No. 78–1340 (10th Cir., Feb. 20, 1979, unpublished); *Rifai v. United States Parole Commission*, 586 F.2d 695 (9th Cir. 1978); *Shepard v. Taylor*, 556 F.2d 648 (2nd Cir. 1977); *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977); *Kirby v. United States*, 463 F.Supp. 703 (D.Minn.1979), *vacated on other grounds*, 600 F.2d 146 (8th Cir. 1979). Moreover, even if the guidelines were deemed to be "laws," no violation such as occurred in *Rodriguez* or *Weaver* has taken place in this case.

The Court in *Rodriguez v. United States Parole Commission, supra*, was concerned with a regulation that eliminated a parole release hearing requirement and in effect denied the petitioner, who was sentenced to a short term, any opportunity to be considered for release on parole. *See also, Graham v. United States Parole Commission*, 629 F.2d 1040 (5th Cir. 1980). In *Weaver v. Graham, supra*, the Court condemned a statute which prospectively constricted the petitioner's opportunity to shorten his time in prison by reducing the amount of credit he could automatically acquire for good conduct. In *United States v. Ferri, supra*, the Third Circuit Court of Appeals, (on remand from the United States Supreme Court for reconsideration in light of *Weaver v. Graham, supra*), opined that application of the PCRA to a prisoner sentenced before its enactment violated the *ex post facto* clause because it delayed for up to 120 days his initial hearing and, thus, his eligibility or opportunity for parole release. The case was remanded to the district court.

In the case before this Court, petitioner's opportunity or eligibility to be considered for release on parole was set by the Court to accrue at the one-third point of his sentence and has not been altered.

■ We also find significant the fact that the gain time provided for by the repealed law in *Weaver* was not discretionary, even though the same is suggested by the Third Circuit in *Ferri*. Rather, gain time under the old statute was *automatically* acquired upon absence of misconduct and the amount of gain time to be awarded was fixed by statute. The grant of federal parole, on the other hand, is discretionary. Thus, while the opportunity or eligibility to be considered for parole may not be decreased after it has been established at sentencing, the actual time at which to grant release on parole is flexible. The decision as to when to actually grant parole prior to the two-thirds point of a sentence is not indelibly fixed in any statute, regulation or policy. As long as the parole grant decision remains flexible and results from individualized consideration, there is no *ex post facto* violation. *Zeidman v. United States Parole Commission*, 593 F.2d 806 (7th Cir. 1979).

■ Fortunately, we need not decide in this case the specific issue of whether or not a retroactive, substantial adverse change in parole determinant factors is *ex post facto*. Here, petitioner does not even allege that considerations underlying the grant or denial of parole have been substantially altered from what they were at the time he committed his offense. He merely states that the enactment since his sentencing of 18 U.S.C. § 4206 and the Commission's regulations and guidelines which permit the denial of parole based upon the severity of the offense, violates the *ex post facto* clause. Guidelines essentially the same as the ones employed today have been utilized by the Commission since 1973, *Wilden v. Fields, supra*. Consequently, consideration of the severity of a parole applicant's offense was a significant factor in parole consideration prior to the time petitioner committed his offense.

The adoption of parole guidelines may well have coincided with a shift in the emphasis of parole considerations. It appears that prior to the guidelines, parole generally served the prisoner's interests of reward and rehabilitation. Under the guidelines, emphasis has shifted to service and protection of the interests of society. *See Buckhannon v. Hambrick*, 487 F.Supp. 41 (S.D.N.Y.1980). Earlier shifts in sentencing and parole emphasis are described in *United States v. Grayson*, 438 U.S. 41, 45–46, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978):

In *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949), Mr. Justice Black observed that the "prevalent modern philosophy of penology [is] that the punishment should fit the offender and not merely the crime," and that, accordingly, sentences should be determined with an eye toward the "[r]eformation and rehabilitation of offenders." *Id.*, at 248, 69 S.Ct. at 1083. But it has not always been so. In the early days of the Republic, when imprisonment had only recently emerged as an alternative to the death penalty, confinement in public stocks, or whipping in the town square, the period of incarceration was generally prescribed with specificity by the legislature. Each crime had its defined punishment. See Report of Twentieth Century Fund Task Force on Criminal Sentencing, Fair and Certain Punishment 83–85 (1976) (Task Force Report). The "excessive rigidity of the [mandatory or fixed sentence] system" soon gave way in some jurisdictions, however, to a scheme permitting the sentencing judge—or jury—to consider aggravating and mitigating circumstances surrounding an offense, and, on that basis, to select a sentence within a *range* defined by the legislature. Tappan, Sentencing Under the Model Penal Code, 23 Law & Contemp.Prob. 528, 529 (1958). Nevertheless, the focus remained on the crime; Each particular offense was to be punished in proportion to the social harm caused by it and according to the offender's culpability. See, *e.g.*, Iowa Code of

1851, Tit. XXIV, ch. 182, §§ 3067, 3068, reprinted in S. Rubin, Law of Criminal Correction 131–132 (2d ed. 1973). The purpose of incarceration remained, primarily, retribution and punishment.

Approximately a century ago, a reform movement asserting that the purpose of incarceration, and therefore the guiding consideration in sentencing, should be rehabilitation of the offender, dramatically altered the approach to sentencing. A fundamental proposal of this movement was a flexible sentencing system permitting judges and correctional personnel, particularly the latter, to set the release date of prisoners according to informed judgments concerning their potential for, or actual rehabilitation and their likely recidivism. Task Force Report 82. Indeed, the most extreme formulations of the emerging rehabilitation model, with its "reformatory sentence," posited that "convicts [regardless of the nature of their crime] can never be rightfully imprisoned except upon proof that it is unsafe for themselves and for society to leave them free, and when confined can never be rightfully released until they show themselves fit for membership in a free community." Lewis, The Indeterminate Sentence, 9 Yale L.J. 17, 27 (1899).

This extreme formulation, although influential, was not adopted unmodified by any jurisdiction. See Tappan, *supra*, at 531–533. "The influences of legalism and realism were powerful enough . . . to prevent the enactment of this form of indeterminate sentencing. Concern for personal liberty, skepticism concerning administrative decisions about prisoner reformation and readiness for release, insistence upon the preservation of some measure of deterrent emphasis, and other such factors, undoubtedly, led, instead, to a system—indeed, a complex of systems—in which maximum terms were generally employed." *Id.*, at 530. Thus it is that today the extent of a federal prisoner's confinement is initially determined by the sentencing judge, who selects a term within an often broad, congressionally prescribed range; release on parole is then available on review by the United States Parole Commission, which, as a general rule, may conditionally release a prisoner any time after he served one-third of the judicially fixed term. See 18 U.S.C. § 4205 (1976 ed.), (footnotes omitted).

As this excerpt illustrates, changes in parole and sentencing policies have not been so abrupt or radical as to impinge upon the guard against insufficient notice which is the basis for the Constitution's *ex post facto* provision. Instead, parole policy appears to be a slowly evolving, ever changing process. The excerpt further indicates that executive authorities have been involved in prison release decisions since long before passage of the PCRA.

If one carries to its logical conclusion the argument that the Commission may not constitutionally be allowed to alter the date of prison release manifestly intended by the sentencing judge, there would be no parole of any prisoner for any reason. Were that situation to materialize, the overburdened federal courts would certainly be faced with fewer frivolous lawsuits. At this point in the evolution of law on federal parole, this Court is mainly concerned with the two claims which, in its opinion, are deserving of federal habeas corpus review. One is that the Commission failed to adhere to requisite procedural or statutory policies, and the other is that there is an insufficient evidentiary basis for the agency's actions. With respect to other general harangues or dissatisfactions with parole processes and decisions, the federal courts have neither the authority nor the resources to interfere with Congress' formulation or the Commission's implementation of the federal parole system.

For all the foregoing reasons, this Court finds that the decision by the United States Parole Commission to deny petitioner's application for parole was made in accordance with the Parole Commission and Reorganization Act and the regulations and guidelines promulgated thereunder, and did not result in a violation of the separation of powers doctrine or the *ex post facto* clause.

The Court also rejects petitioner's claim that the "Greatest II" offense severity category is discriminatory because it has no maximum limit to the customary range of time to be served before release. The maximum limit of this category may be considered to be the expiration date of petitioner's sentence. Moreover, petitioner does not allege that there is no rational basis for the variance in this most severe category or that he has been treated differently from other applicants assigned the same category.

IT IS THEREFORE ORDERED that this action be dismissed and all relief denied and that the Clerk transmit copies of this Memorandum and Order to petitioner and to the United States Attorney.