809 P.2d 1171

**Robert D. FREEMAN,
Petitioner–Appellant,**

v.

**STATE of Idaho, COMMISSION OF
PARDONS AND PAROLES,
Respondent.**

No. 18899.

Court of Appeals of Idaho.

March 26, 1991.

Petition for Review Denied
May 22, 1991.

Robert D. Freeman, Boise, pro se.

Larry J. EchoHawk, Atty. Gen., Robert R. Gates, Deputy Atty. Gen., Boise, for respondent.

PER CURIAM.

This proceeding is the second appeal brought in the same habeas corpus action by Robert Freeman, an inmate in the custody of the state Board of Correction. He appeals from a decision of the district court upholding a magistrate's order denying his amended petition for a writ of habeas corpus. In his amended petition, Freeman alleged that the Commission of Pardons and Parole had denied him "meaningful" parole hearings in 1986, in 1987 and in 1989. The magistrate found that Freeman's amended petition did not allege facts sufficient to support habeas corpus relief. We affirm.

Freeman had been sentenced to the custody of the Board of Correction in 1982 on two counts of lewd conduct with children. He received an indeterminate sentence of twenty years on the first count and an indeterminate sentence of ten years, to be served consecutively, on the second count. When his parole hearing scheduled for October, 1986, was cancelled, he filed a petition for writ of habeas corpus. Evidently, this filing resulted in a parole hearing in April, 1987. However, he was denied parole at that time under the Parole Commission's policies because he was subject to consecutive sentences. He then filed another petition for a writ of habeas corpus (commencing the action culminating in this appeal) alleging that the Commission had denied him a meaningful opportunity for parole by determining he could not be considered for parole until he had served the first of his two sentences. That application for habeas corpus relief was dismissed by the magistrate because the petition was not verified as required by I.C. § 19–4906(b). Freeman then brought the first appeal in this case.[1]

On review, we held that the verification requirement had been waived by the respondent. We therefore reversed the magistrate's order of dismissal. Also, because it appeared the Commission's policy may have changed and that Freeman had been given at least two parole hearings while the appeal was pending, we remanded the case with directions to permit Freeman to file an amended petition addressing his then current status. When Freeman filed his amended petition, the magistrate again denied relief and the instant appeal followed.

■ Preliminarily, we note our standard of review. On appeal from a decision of

---

1. *Freeman v. State*, 116 Idaho 985, 783 P.2d 324 (Ct.App.1989).

the district court, rendered in its capacity as an intermediate appellate court, we give due regard to the determination made by the district court, but we will exercise free review over the action taken by the magistrate in dismissing a petition for writ of habeas corpus for failure to allege sufficient facts to support relief.

In Freeman's first appeal in this action, we expressed concern over Freeman's allegation that he may not have been considered by the Commission for parole eligibility upon the Commission's erroneous view that an inmate serving consecutive sentences could not be granted a parole hearing until his good time release date, or until the entirety of his first sentence has been served, whichever came first. If that allegation were true, we held, then Freeman's petition did assert a claim for relief which should be explored by the magistrate during a hearing. Inasmuch as we were advised at oral argument that at least two parole hearings had been given Freeman while the prior appeal was pending, we remanded the proceeding with directions for the magistrate to determine whether Freeman's petition was moot in light of changes in the Commission's policy. To facilitate development of this issue, we directed that Freeman be allowed a reasonable period of time within which to file an amended verified petition addressing his current status. We said:

> Unless [Freeman] can show by specific factual allegations that the Commission has continued to deny him parole *based solely* upon its former policy requiring all inmates to fully serve the first indeterminate sentence before becoming parole eligible, his petition for relief will have become moot.

116 Idaho at 987, 783 P.2d at 326 (emphasis supplied).

Freeman's amended petition, filed after the action was remanded to the magistrate court, did not allege that the Commission has continued to consider him ineligible for parole consideration through application of the former, erroneous policy. Instead, Freeman claimed that he had been denied a "meaningful" parole hearing, specifying a number of alleged errors (which we will discuss later in this opinion).

Due to Freeman's failure to allege in his amended petition any assertion that the Commission continued to improperly apply its former policy of requiring service of the first sentence before Freeman would be considered for parole, we will deem the question of the application of that policy moot in accordance with our previous opinion.[2] This disposition obviates the necessity of any further review of Freeman's parole hearings in 1986 and in 1987.

■ We thus turn to Freeman's challenges to his parole hearing in 1989, raised in his amended petition in response to our invitation to address his current status. Freeman alleged that he had been denied a "meaningful" parole hearing on February 23, 1989, in that: (1) the Commission refused to allow him to review his presentence report; (2) although a psychological evaluation was prepared pursuant to I.C. § 20–223, it was based on his answers to over 600 questions and an interview with a psychologist, all accomplished within ninety minutes; (3) he was denied the opportunity to submit work reports from his institutional supervisors; (4) he was not told the reasons for being denied parole; (5) the Commission's decision not to schedule Freeman for another parole hearing until July, 1998, denied his *"ex post facto"* right to have a parole review at least every 30 months; and (6) his denial of parole was in retaliation for bringing this habeas corpus action.[3] We will address each of these issues in turn.

■ 1. *The Presentence Report.* Freeman argues that the Commission erred in

---

2. *See Izatt v. State,* 104 Idaho 597, 661 P.2d 763 (1983).

3. In his brief on appeal, Freeman also asserts two other alleged errors with respect to his parole hearing in 1989. First, he represents that the hearing involved only three of the five members of the Parole Commission. He argues that he was entitled to a hearing with all five members present. Second, he claims that his psy-

refusing to allow him to review the report prepared for the district court when he was sentenced in 1982. We find no error in this regard. The availability and use of presentence reports after defendants have been sentenced are governed by I.C.R. 32. Following use in the sentencing procedure, a presentence report is to be sealed by court order and thereafter cannot be opened without an order of the court authorizing release of the report, or any part of it, to a specific agency or individual. Although a copy of such a report is provided to the Department of Corrections when a defendant is committed to or supervised by the Department,

> [N]either the defendant, his counsel, the prosecuting attorney *nor any person authorized by the sentencing court to receive a copy of the presentence report shall release to any other person or agency the report or any information contained therein.* Any violation of this rule shall be deemed contempt of court and subject to appropriate sanctions.

I.C.R. 32(h) (emphasis supplied). By the terms of this rule, the Commission was prohibited from allowing Freeman to review any information contained in the Department's copy of Freeman's presentence report, without prior approval from the sentencing court. Freeman did not allege in his amended petition, nor does the record show, that an attempt was made unsuccessfully to obtain an order of the court for release of his presentence report. Consequently, we find no merit to Freeman's contention that he was wrongfully denied access to that presentence report.

■ 2. *The Psychological Evaluation.* In his amended petition for a writ of habe-

as corpus, Freeman questioned the sufficiency of the amount of time—ninety minutes—for his answers to written questions and responses during an interview by a psychological evaluator. However, on appeal he presents no cogent argument or citation to any authority demonstrating that any error occurred with regard to the preparation or consideration of the report which would entitle him to habeas corpus relief. As result, we deem this issue unreviewable.[4]

3. *Work Reports.* Freeman next asserts that he was denied the opportunity to present reports from his supervisors concerning his work in the institution where he was housed while in the custody of the Board of Correction. He claims that his written requests for such reports were not forwarded to the Commission for its consideration.

■ We agree that an inmate's employment history in the institution would be relevant to the question of parole. Reports of exemplary activity would demonstrate the extent of rehabilitation; conversely, adverse reports may demonstrate an inability to conform to institutional rules or show a lack of rehabilitation or potential on the part of an inmate, indicating that parole may not be a feasible alternative. Nevertheless, we are not persuaded that the lack of employment records in Freeman's case may have had any measurable effect on the Commission's decision not to grant parole.

It is well settled that parole is a gratuity which "shall be ordered only for the best interests of society when the commission reasonably believes that the prisoner no longer poses a threat to the safety of socie-

---

chological evaluation was not prepared by a "licensed" psychologist or psychiatrist but instead was prepared by a person who was not licensed to perform such evaluations. Essentially, he submits that I.C. § 20–223 should be interpreted to require evaluations only by psychologists or psychiatrists who are licensed. However, neither of these claims was asserted as grounds for relief in his amended petition for a writ of habeas corpus, but have been raised for the first time in this appeal. Accordingly,

we will not address those issues. *Kinsela v. State, Dept. of Finance,* 117 Idaho 632, 790 P.2d 1388 (1990).

**4.** *See* I.A.R. 35(a)(6); *State v. Hoisington,* 104 Idaho 153, 159, 657 P.2d 17, 23 (1983); *State v. Burris,* 101 Idaho 683, 684, n. 1, 619 P.2d 1136, 1137, n. 1 (1980); *State v. Phillips,* 117 Idaho 23, 784 P.2d 353 (Ct.App.1989).

ty, not as a reward of clemency...."[5] The decision whether to grant parole rests within the sound discretion of the Commission.[6] The United States Supreme Court has explained that the decision whether to release a prisoner on parole depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the decision-making body, based upon the members' experience with the difficult and sensitive task of evaluating the advisability of parole release.[7] The parole determination may be made for a variety of reasons and often involves no more than informed predictions as to what would best serve correctional purposes.[8] The decision turns on a "discretionary assessment of multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done."[9] In the present case, we are not convinced that a review of Freeman's employment history in the institution would have materially altered the Commission's determination that placing Freeman on parole was not in the best interests of society.

■ 4. *Failure to Inform of Reasons for Denial of Parole.* Freeman contends

that, as a matter of due process, he was entitled to know the reasons why the Commission refused to grant him parole. This point is not well taken. The Commission is not obligated as a matter of due process to give its reasons for a denial of parole.[10]

■ 5. *"Ex Post Facto" Argument.* When Freeman entered the Idaho penal system in 1982, the Parole Commission had a written policy affording a parole consideration review "no less frequently than every thirty (30) months."[11] After Freeman's institutionalization, the Commission changed its policy and deleted the thirty-month review opportunity. In his amended petition for writ of habeas corpus, Freeman contended that this thirty-month review policy became a vested right for him which was violated when the Commission decided in February, 1989, not to review Freeman's eligibility for parole until July, 1998. He characterizes this action as a violation of Art. I, § 9 of the United States Constitution, the provision prohibiting the enactment of *ex post facto* laws.[12]

In support of his argument, Freeman cites *Rodriguez v. United States Parole Commission,* 594 F.2d 170 (7th Cir.1979).

---

**5.** I.C. § 20–223. *See also Flores v. State,* 109 Idaho 182, 706 P.2d 71 (Ct.App.1985).

**6.** *Ybarra v. Dermitt,* 104 Idaho 150, 657 P.2d 14 (1983); *Vittone v. State,* 114 Idaho 618, 759 P.2d 909 (Ct.App.1988).

**7.** *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 9–10, 99 S.Ct. 2100, 2104–2105, 60 L.Ed.2d 668 (1979).

**8.** *Id., citing Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

**9.** *Id.,* quoting Kadish, *The Advocate and the Expert—Counsel in the Peno–Correctional Process,* 45 Minn.L.Rev. 803, 813 (1961).

**10.** *Izatt v. State, supra; Vittone v. State, supra.*

**11.** This policy is set forth in *Izatt v. State, supra,* in footnote 2 of the opinion at page 599 of 104 Idaho and page 765 of 661 P.2d.

**12.** The United States Supreme Court in *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), defined *ex post facto* laws as:

1st, every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*See State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981); *Mellinger v. Idaho Dept. of Corrections,* 114 Idaho 494, 757 P.2d 1213 (Ct.App.1988).

More recently, the United States Supreme Court again addressed the implication of *ex post facto* laws. The Court noted that "central to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), *quoting Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

In that case, Rodriguez had begun serving a sentence while there existed a Parole Commission rule making all inmates immediately eligible for parole. Later, the Commission changed the rule to provide for parole hearings every eighteen months. Rodriguez filed a petition for a writ of habeas corpus, challenging the new regulation as a violation of his rights under the *ex post facto* clause. The federal district court agreed and ordered the Parole Commission to release Rodriguez from custody unless the Commission held a meaningful hearing within thirty days. On appeal, the Court of Appeals for the Seventh Circuit affirmed.

While we appreciate Freeman's reliance on *Rodriguez,* that case does not appear to represent the rule adopted by the Circuit Courts of Appeal throughout the country. In fact, in an opinion by another panel of the Seventh Circuit Court issued on the same day as *Rodriguez,* the Court held that application to existing inmates of subsequent changes in the Parole Commission's guidelines—increasing the recommended period of incarceration from 12–16 months to 20–26 months before a prisoner would be reviewed for parole—did not violate the *ex post facto* prohibition.[13] Courts in other circuits likewise have rejected the suggestion that the regulations promulgated by the U.S. Parole Commission constitute "laws" within the meaning of the *ex post facto* clause.[14] In light of the position

taken by the vast majority of the federal courts addressing the *ex post facto* argument, we decline to apply *Rodriguez* to Freeman's case.

Nor do we find, aside from the inapplicability to Freeman's circumstances of the regulations of the United States Parole Commission, any *ex post facto* defect with regard to rescinding the former rule of the Idaho Commission calling for review of an inmate's potential for parole at least every thirty months. The Commission's regulations were promulgated pursuant to legislative authority.[15] Consistent with the observations of the federal courts with regard to federal parole regulations, the rules of the Idaho Commission do not have the characteristics of laws. They are not fixed and rigid, but generally are flexible, allowing for change by the Commission from time to time as the need arises in order to properly discharge the discretionary function of the Commission in reaching its parole determinations. In particular, the decision as to *when* to consider a prisoner for parole on the indeterminate portion of an existing sentence need not be indelibly fixed (except by statute), but instead should remain flexible, for individualized consideration, and to permit the Commission considerable latitude in adjusting to the evolutionary emphasis of parole considerations.[16] We conclude that a regulatory change by the Commission in the timing for review of an inmate's eligibility for parole does not give

13.  *Zeidman v. United States Parole Commission,* 593 F.2d 806 (7th Cir.1979). The *Zeidman* decision was later followed in the Seventh Circuit in *Inglese v. United States Parole Commission,* 768 F.2d 932 (7th Cir.1985).

14.  *See United States ex rel. Forman v. McCall,* 776 F.2d 1156 (3d Cir.1985), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986); *DiNapoli v. Northwest Regional Parole Commission,* 764 F.2d 143 (2d Cir.1985), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *Dufresne v. Baer,* 744 F.2d 1543 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985); *Paschal v. Wainwright,* 738 F.2d 1173 (11th Cir.1984); *Richardson v. United States Parole Commission,* 729 F.2d 1154 (8th Cir.1984); *Roth v. United States Parole Commission,* 724 F.2d 836 (9th Cir.1984); *Stroud v. United States Parole Commission,* 668

F.2d 843 (5th Cir.1982); *Warren v. United States Parole Commission,* 659 F.2d 183 (D.C.Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Priore v. Nelson,* 626 F.2d 211 (2d Cir.1980); *Rifai v. United States Parole Commission,* 586 F.2d 695 (9th Cir.1978); *Shepard v. Taylor,* 556 F.2d 648 (2d Cir.1977); *Ruip v. United States,* 555 F.2d 1331 (6th Cir.1977); *Joost v. United States Parole Commission,* 535 F.Supp. 71 (D.Kan.1982).

15.  I.C. § 20–223; *see Standlee v. State,* 96 Idaho 849, 538 P.2d 778 (1975).

16.  *See United States v. Grayson,* 438 U.S. 41, 45–46, 98 S.Ct. 2610, 2613–2614, 57 L.Ed.2d 582 (1978) (describing historical reforms in sentencing and parole considerations).

rise to a claim that the alteration violates the constitutional restriction against *ex post facto* laws.

6. *Retaliatory Denial of Parole.* Finally, Freeman suggests in his amended petition for habeas corpus relief that the Commission denied parole to him in 1989 in retaliation for bringing this action initially. Beyond this bare assertion, Freeman has presented no factual allegations to support such a speculative conclusion. We will not presume that the members of the Parole Commission improperly engaged in a discharge of their duties. In fact, the presumption is to the contrary; there is a presumption of regularity in performance of official duties by public officers.[17] Consequently, we find that Freeman has not provided a basis for relief in habeas corpus with this allegation.

Having reviewed this case, we affirm the decision of the district court upholding the order of the magistrate denying relief to Freeman on his amended petition for a writ of habeas corpus. No costs or attorney fees awarded on appeal.

---

**17.** *Horner v. Ponderosa Pine Logging,* 107 Idaho 1111, 695 P.2d 1250 (1985); *Farm Bureau Fin. Co., Inc. v. Carney,* 100 Idaho 745, 605 P.2d 509 (1980).